[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 427 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 428 
The first question presented by the exceptions in this case arises upon the refusal of the judge to rule according to the request of the plaintiffs' counsel. The request was that it should be submitted to the jury to find whether the officers and managers of the defendants' boat could have seen the plaintiffs' vessel soon enough to have enabled them to stand off and not enter the harbor, and thus avoid collision, with instructions, that if they could have seen the vessel, then they were bound at their peril to see it and to stand off and avoid the collision.
The law imposes upon all persons using a highway, whether upon land or water, the obligation to exercise ordinary care to avoid inflicting injury upon others. The degree of care which is thus imposed is not capable of exact definition in words. It is sometimes said to be that degree of care which a prudent man exercises about his own affairs. This definition, and all similar ones, plainly do not greatly aid the inquiry as to the exact limits of the care to be exercised in any particular case. The difficulty is inherent in the subject. How the rule may practically be influenced by the general habits of society is well illustrated in Story on Bailments, p. 8-11. It seems plain also that the degree of vigilance, which the law will exact as implied by the requirement of ordinary care, must vary with the probable consequences of negligence, and also with the command of means to avoid injuring others possessed by the person on whom the obligation is imposed. Thus, upon a person walking in a country road, and upon another driving a spirited horse in a crowded thoroughfare, the requirement of ordinary care will impose very different degrees of vigilance to avoid inflicting injury upon others. Under some circumstances a very high degree of vigilance is demanded by the requirement of ordinary care. Where the consequence of negligence will probably be serious injury to others, and where the means of avoiding the infliction of injury upon others are completely within the party's power, *Page 430 
ordinary care requires almost the utmost degree of human vigilance and foresight.
These principles have been applied with great discrimination and good judgment to the various cases of collision between vessels, arising both on the open sea and in harbors, where both or only one was in motion, where the power of control was alike in each, and where the one was superior in this respect to the other, and to all the varying circumstances which can attend upon such disasters. The position contended for by the appellants' counsel goes beyond any case which I have met with, and is not sustained by the principles of law applicable to the subject. It does not seek to put to the jury the question whether a vigilant look-out was maintained, or whether such a look-out would have discovered the plaintiffs' vessel, but seeks to limit the inquiry to the mere physical possibility of the plaintiffs' vessel being seen by some means which the officers and managers of the defendants' boat might have adopted. The case mainly relied on to sustain this doctrine is the case of The Scioto (Daveis's R.,
359), in which Judge Ware uses the expression "that a vessel entering the harbor in the night time is put on her utmost vigilance." This is stated as a general rule, admitting, perhaps, of no exception. But as soon as the learned judge proceeds to apply the rule, it appears that this forcible expression of the degree of vigilance demanded of a vessel entering a harbor in the night time is not intended to exclude the idea that even such vigilance may fail to prevent collision, and yet the vessel not be in fault. For he proceeds to explain, that under such circumstances, and speaking with reference to the harbor of Portland, he sitting as judge both of the law and fact, the master and crew ought to be on deck and in such parts of the vessel as to be able to control her motions and to see any vessel that lies in her track and which they may be approaching, and concludes that if this is not done and a collision takes place, there will be great danger that the *Page 431 
fault will be placed to her account. He then proceeds to examine what precautions were in fact taken on board the Scioto and concludes, that, if by any reasonable degree of watchfulness the Falcon (the injured vessel) might have been seen, she ought to have been seen. The question of fact, whether the Falcon might have been seen, is then considered, and he concludes, "that, without supposing it absolutely impossible to have seen the Falcon sooner, he does not feel authorized to say that the Scioto must be in fault for not doing it, or that there was a want of due vigilance on her part." The error into which the counsel has fallen has originated from judging of the doctrine of the case from a single expression in the opinion, and not from its whole scope. The point of the judgment in this branch of the case was, that although it was possible to have seen the Falcon sooner, yet it did not follow that the Scioto was in fault for not seeing her. The case is therefore against the plaintiffs instead of in their favor. Neither St. John v. Paine (10 How., 585, 586), nor The Genesee Chief v. Fitzhugh (12 How., 463), supports the doctrine contended for by the plaintiffs. On the other hand they both show, from the course of the discussion in the opinions, that whether proper diligence and care have been used in the navigation of a vessel is a question to be determined upon all the circumstances of each case.
Upon the principles already considered, it is quite apparent that a different amount of care would satisfy the requirements of the law in a vessel entering an unfrequented harbor, from that which would be demanded in entering a harbor like that of New-York. The probability of injury arising from want of care is always an important element in determining the degree of care which the law requires. It was, therefore, proper to admit evidence that no vessel had ever grounded between the piers at Cleveland, where the plaintiffs' vessel went aground; and this evidence was properly submitted to the jury as bearing upon the *Page 432 
amount of precaution which the defendants were bound to exercise in entering the harbor. In the case of the Scioto before cited, the judge sitting in admiralty had the whole fact and law before him to be disposed of in determining the question of negligence, which is always compounded of fact and law. The facts, which he found proved in respect to the harbor of Portland, are the subject of comment as bearing upon the extent of the obligation upon those navigating the two vessels. This was obviously right, because it is idle to say that the hazards of different harbors are not different; and if they are different, then it follows that the degrees of care to be employed in entering them are also different. In this case there is no proof that vessels ever lay between the two piers; and the proof alluded to shows that vessels did not get aground between them, and had done so only in this instance. From the evidence, all that can be inferred is that the space between these piers was a passage to the harbor; in which passage the only hazard which could reasonably be anticipated was that of encountering other vessels entering or leaving the port. Against that hazard, therefore, the defendants were bound principally to be on their guard; and although they may have been bound to consider and provide against the possibility of other hazards, yet, as to them, they were not bound to take so extraordinary precautions as they were bound to adopt against those hazards which might reasonably be anticipated to belong to the port they were about to enter.
The only remaining direction complained of was, that if the defendants were careful and prudent in entering the harbor, and did not see the plaintiffs' vessel until it was too late for them to back out, then it was proper for them to go into the harbor exercising care and prudence in the management of their vessel so as to do no more injury than was inevitable. The construction put upon this part of the charge by the plaintiffs' counsel, which limits the care and *Page 433 
prudence required by it to that which would subserve the defendants' safety and makes the seeing or not seeing the plaintiffs' vessel the test of the defendants' liability, is not correct. The charge could only have been understood as speaking of such care and prudence as were required with reference to the rights of those who might be injured by their absence. We might have been better satisfied with a more ample statement of the rights and duties of the parties in the judge's charge, but we cannot see that the charge is substantially wrong in this respect. If the plaintiffs desired to have it made more particularly applicable to the facts proved in detail, they should have made their request to the judge, or stated the ground of their objection particularly.
The judgment should be affirmed.
CRIPPEN, J., also delivered an opinion in favor of affirmance.
Judgment accordingly.