JEREMIAH J. AUSTIN, President of the Albany and Canal Line of Towboats, Respondent, *v.* THE NEW JERSEY STEAMBOAT COMPANY, Appellant.

Where a steamboat collides with a vessel aground in or near the channel of a navigable river, it will not relieve the colliding vessel from liability for the injury, that, from some hidden and unforeseen cause, her bow was suddenly sheered directly toward the injured vessel, when so near that, by the exercise of the utmost care and vigilance, the collision could not

be avoided, when it also appears that, at the time the steamer's bow so sheered, her pilot, under an erroneous impression as to the true direction of the channel, was negligently steering her away from it, and out of the accustomed course.

A party cannot excuse himself upon the plea of inevitable accident, where, by his own negligence, he has placed himself in a position which renders a collision unavoidable, He must exercise care and foresight to prevent reaching a point from which he is unable to extricate himself; and omitting these, the greatest vigilance and skill on his part subsequently, when the danger arises, will not avail him.

Where it appears that the grounding of the injured vessel was caused by her running out of the accustomed channel (her pilot committing the same mistake as to the proper course that was afterward committed by the pilot of the colliding steamer), the negligence in so running her aground is not that " proximate " negligence *contributing* to the injury, which will prevent a recovery by her owners for damages occasioned by the subsequent negligence of those in charge of the steamer in running into her, when they had knowledge of her position and that she was aground.

Notwithstanding the previous negligence of those managing the grounded vessel, if, at the time when the injury was committed, it might have been avoided by the defendant, by the exercise of reasonable care and prudence, an action will lie for the injury.

*Strout* v. *Foster* (1 How., U. S., 89), commented upon and distinguished.

It is not negligence in those in charge of a vessel aground to omit to give signals to approaching vessels as to which side of her is the proper course for them to take, even if such course is known to them. The customary signals from steam vessels by blasts of the steam whistle are to indicate the course which the vessel giving them intends, herself, to take, and are not therefore appropriate to be given by a steamer not in motion.

This court is concluded by the findings of fact, in the court below, unless such findings are unsupported by any evidence, or unless by undisputed evidence the contrary is established.

(Argued October 27th; decided November 22d, 1870.)

APPEAL from a judgment of the late General Term of the Supreme Court in the third judicial district, affirming a judgment in favor of the plaintiff, entered on the report of Hon. HENRY HOGEBOOM, referee, for $19,281.59.

On March 27th, 1866, at the opening of navigation in the Hudson river, the plaintiff's boats (being the steamer McDonald and a tow of barges and canal boats) left Albany on a falling tide and grounded on the east side of the channel, about one mile and a half below the city.

About three hours afterward, the night being clear and moon shining, the tide running ebb three miles an hour, the defendant's steamboat, St. John, on her regular voyage down the river, attempted to pass the plaintiff's boats on the east, but by a sudden sheer to the west when near, ran into and sank the plaintiff's barge Buffalo, loaded with a large quantity of flour and cheese. The course of the St. John had been observed on board the plaintiff's boats, but no signals of any kind were made from them.

The true course of the channel was to the west of the tow, where, as it turned out, there was plenty of water for the St. John to have passed the tow without a collision. The pilot of the St. John supposed that the channel of the river had that season shifted to the eastward of the point where the tow lay, and east of where the channel had been the year before. In this, he was, in fact, mistaken. Under this impression, however, he attempted to take the steamer to the east, supposing there was not water to the west. The pilots of the McDonald had grounded the tow by steering too far to the east, laboring under the same mistake as those on the St. John, as to the shifting of the channel. It was the first trip that season of the McDonald, though the St. John had made one or two.

The McDonald and the tow were plainly seen by the pilot of the St. John while that steamer was at her dock at Albany, and were known to be aground.

The sudden sheer given to the bow of the St. John was ascribed by the pilot to her striking a sand "hummock" recently formed and impossible to be seen or known by him; and it was claimed by the defendant that all was done that was possible to avoid the collision, after the bow of the St. John sheered.

After the McDonald had grounded, and before the St. John came down, one of the pilots of the McDonald had sounded in the neighborhood, and knew the channel to be to the west of them. The channel of the river at this point was between 300 and 500 feet wide.

No attempt was made on board the McDonald and tow to direct the St. John to pass them to the west, where the channel was, either by steam whistle or any other signal.

It appeared in evidence that it was a custom for steam vessels in motion passing each other, to blow one blast of the steam whistle to indicate they were going to the right, and two to indicate they were going to the left. The pilot of the St. John testified that he blew two blasts to indicate to the tow that he was going to the left (east) of them. This was not heard or observed on the tow, and there was some dispute as to the fact.

The defendant insisted that the plaintiff's negligence, first, in getting aground on the east side of the channel; and second, in omitting to signal the defendant's pilot, or direct him where the channel was, which they had discovered, contributed to the injury. It also insisted that its servants had used all reasonable and proper care, and the collision was an inevitable accident.

*John H. Reynolds* and *W. P. Prentice*, for the appellant, upon the question of inevitable accident, and the defendant's care, cited *The Fashion* (1 Newb. Ad., 8) ; *Kelsey* v. *Barney* (12 N. Y., 425); Brightley's Dig. Sup., 313; *Steinback* v. *Rae* (14 How., 532); *Dygert* v. *Bradley* (8 Wend., 471); *Grace Girdler* (7 Wall., 203) ; *Ann Caroline* (2 Wall., 538); *Santa Claus* (Olc., 442) ; *Osprey* (Sprague, 245) ; Pars. Mar. Law, 202, r. 3, and cases cited.

As to the contributory negligence of the plaintiff, they cited *Barnes* v. *Cole* (21 Wend., 185); *Nelson* v. *Leland* (22 How., 55); *Rathbun* v. *Payne* (19 Wend., 398) ; *Strout* v. *Foster* (1 How. U. S., 89) ; *The Indiana* (1 Abb. Adm., 330); *The Hypodame* (6 Wall., 216) ; *Fero* v. *Buff. and State Line R. R.* (22 N. Y., 209) ; *Randolph* v. *The United States* (1 Newb., 497) ; *The Narragansett* (Olcott, 246); *Eliza and Abby* (1 Betts Dec., 435) ; *Buzzard* v. *Petrel* (6 McLean, 491) ; *The Potomac* (8 Wall., 590); *The Steamboat New Jersey* (Olcott, 415) ; *Hane* v. *Anthracite* (U. S. Law, Mag., Dec., 1850)

"*Europa*"; *Guinon* v. *N. Y. and Harlem R. R. Co.* (3 Robt., 25); *Baxter* v. *2d Ave. R. R. Co.* (3 Robt., 511); *Grippen* v. *New York Cent. R. R.* (40 N. Y., 34); *Baxter* v. *Troy and Boston R. R. Co.* (41 N. Y.. 502).

*Samuel Hand,* for the respondent, on the point of inevitable accident, cited *Steamer Oregon* v. *Rocca* (18 How. U. S., 570); *The Sciota* (Davies, 359); *U. S.* v. *The Mayor* (5 Mis., 230); *The Clement* (2 Curtis, C. C. R., 363); *Lockwood* v. *Lashell* (19 Penn., 344); *R. B. Forbes* (Sprague, 328); *Dygert* v. *Bradley* (8 Wend., 469); *The Rhode Island* (1 Blatchf., 363); *U. S. Mail Steamship Company* v. *Rumball* (21 How. U. S., 372); *St. John* v. *Paine* (10 How. U. S., 581); *Brown* v. *Linn* (31 Penn., 510); *Crockett* v. *Newton* (18 How. U. S., 581); *Adams* v. *Higgins* (27 Miss., 95); *Wright* v. *Brown* (4 Ind., 95); *Pierce* v. *Page* (24 How. U. S., 228); *Louisiana* v. *Fisher* (21 How. U. S., 1); *Holmes* v. *Watson* (29 Penn., 457).

On the point that the plaintiff's negligence in running aground was not proximate, so as to contribute to the injury, he cited *Cook* v. *Champlain Trans. Co.* (1 Den., 91); *Teall* v. *Barton* (40 Barb., 143); *Davies* v. *Mann* (10 M. & W., 148); *Trow* v. *Vermont Central Railroad* (24 Vermont, 495 ); Ld. Campbell in *Dowell* v. *Steam Nav. Co.* (5 Ell. & Bl., 206); *Haley* v. *Earle* (30 N. Y., 208); Harris, J., 18 N. Y., 256, 257; *Tuff* v. *Warman* (5 C. B. N. S., 573); *Spafford* v. *Harlow* (3 All., 176); *Fero* v. *Buffalo R. R.* (22 N. Y., 209); *Morrison* v. *Steam Nav. Co.* (20 Eng. L. & Eq., 455); *Cumming* v. *Spruance* (4 Harrington, 315).

As to plaintiff's omission to signal, he cited *McCready et al.* v. *Goldsmith et al.* (18 How. U. S., 89).

CHURCH, Ch. J.   The referee before whom this action was tried, found as a conclusion of fact that the injury complained of, was caused by the negligence of the defendant, and that the plaintiff was free from any negligence which contributed to the injury, and this court is concluded by these findings,

unless they are unsupported by any evidence, or unless by undisputed evidence the contrary is established. As to the first proposition, that the injury was caused by the defendant's negligence, there was evidence fully justifying the conclusion of the referee. The officers and pilots of the St. John knew before she started from her dock that the plaintiff's tow was grounded and the position it occupied. Instead of pursuing the usual channel, as it had existed for several years, which would have enabled the steamer to pass the plaintiff's tow in safety, on the west side, without any examination to ascertain where the channel was, they directed her eastward, under the impression that a new channel had been formed, which would enable her to pass on the east side. While pursuing this course, she came in contact with some obstacle, which sheered her bow to the west far enough to point her directly toward the plaintiff's tow, and, then becoming unmanageable, she ran into and sunk the plaintiff's barge Buffalo. These leading facts, with the surrounding circumstances detailed at the trial, presented a proper case for the judgment of the referee upon the question of the negligence of the defendant, and we have no power to review his decision. (*Draper* v. *Stouvenel*, 38 N. Y., 219; *Fellows* v. *Northrop*, 39 N, Y,, 117; *Mason* v. *Lord*, 40 N. Y., 476.)

It is claimed, however, that the undisputed evidence shows that the accident was inevitable. This is based upon the idea that the St. John, in the pursuit of a lawful avocation, in a lawful manner, struck the bank, or some other obstacle, and that the highest degree of skill could not have prevented the sheering of the vessel, or the consequent collision. The answer to this position is, that the " sheering " was the immediate consequence of the defendant's negligence, as found by the referee, in running the steamboat out of the accustomed channel. A party cannot avail himself of this defence, who, by his own negligence, gets into a position which renders the accident inevitable. He must exercise care and foresight to prevent reaching a point from which he is unable to extricate himself. There was some evidence tending to show that the

St. John came in contact with a "hummock" or sand bar, which had been suddenly formed, was unknown to navigators, and which could not be guarded against, but the evidence on this point was not undisputed, and was far from being satisfactory, and the referee has not found that that fact existed. If it did exist, and was undisputed, the negligence of the defendants in being at that point, would prevent its availability in this action. (*Crockett* v. *Newton*, 18 How. U. S., 581.)

The authorities cited by the learned counsel for the defendant are not in conflict with these views. In the case of the *Grace Girdler* (7 Wall., 203), the court say: "Inevitable accident is when a vessel is pursuing a lawful avocation, in a lawful manner, *using the proper precautions against danger*, and an accident occurs." It has been adjudged in this case, that the defendant's vessel was not using proper precautions against danger. So in the case of *Fashion* (1 Newb. Ad., 8), an inevitable accident is held to be one "where no fault can be found on either side." The only point decided in *Kelsey* v. *Barnes* (12 N. Y., 425), was that the highest possible care will not be exacted in such a case.

In *Steinbach* v. *Rae* (14 How. U. S., 532), the court held the accident to be inevitable, because neither of the colliding vessels could see the other in time to prevent the accident.

It is also claimed by the defendant, that the negligence of the plaintiff contributed to the injury on two grounds. First, that the tow was in the wrong place, and had committed the same fault alleged against the defendant in endeavoring to sail east of the actual channel, and was guilty of negligence in running aground, which contributed to the injury. The tow was grounded several hours previous, and was entirely helpless at the time of the accident. Those in charge of the St. John had a full view of the tow, and knew her condition before leaving the dock at Albany, and all the way to where it lay, and the evening was clear and moonlight. The St. John, and all other passing vessels, were bound to regard the actual situation of the tow, and to exercise reasonable care to

prevent injury. It is not pretended that the tow did any-
thing to affect the action of the St. John; it simply lay still;
and it is no defence, that some hours previously she had
grounded through carelessness. It cannot be said in such a
case, that the plaintiff's negligence contributed to the injury.
The negligence must be *proximate* and not *remote*. It must
be a negligence occuring at the time the accident happened.
Notwithstanding the previous negligence of the plaintiff, if
at the time when the injury was committed, it might have
been avoided by the defendant by the exercise of reasonable
care and prudence, an action will lie for the injury. (18
N. Y., 256, per Harris; *Davies* v. *Mann*, 10 M. & W., 545;
*Haley* v. *Earle*, 30 N. Y., 208; 24 Verm., 487; *Cummins*
v. *Spruance*, 4 Harr., 315). The case of *Strout* v. *Foster* (1
How. U. S., 89), is unlike this. There the injured vessel had
voluntarily and unnecessarily anchored in the thoroughfare
of one of the difficult passes, or outlets at the mouth of the
Mississippi. The colliding vessel was a sailing vessel, and
became unmanageable in consequence of the sudden failure
of the wind, and floated by the tide and currents against the
anchored vessel. The only evidence of negligence was the
opinion of some experts, that the accident might have been
avoided, if everything had been done by the defendant, which
it was possible to do; in other words, that the highest possi-
ble degree of care and skill might have prevented the col-
lision. The circuit judge held, that the law imposed no *such
diligence* on the party in that case, and yet the judgment of
the Circuit Court was only affirmed by an equal division of
judges of the Supreme Court. In principle, the case is simi-
lar to *Kelsey* v. *Barnes* (12 N. Y., 425), and, if regarded as
authority, is not antagonistic to the right of the plaintiff in
this case.

It is also urged, that the tow was negligent in not warning
the St. John of the danger of proceeding eastward by signal
or otherwise. It seems that one of the men on the tow, while
it lay aground, had made an examination and ascertained that
the channel remained unchanged on the west side, and the

omission to communicate this knowledge, is also urged as an act of negligence. Signals are given to indicate the course of the vessel giving them. Passing steamers give one whistle if they intend to go to the right, and two, if to the left. If the St. John gave two whistles (about which there was some question on the trial) there was no usage or custom of navigation requiring any return signal from the tow, and any attempt to signal or give an alarm (if it had any effect) would have been as likely to produce confusion as to have benefited the steamer, while an effective interference on the part of the tow in the sailing of the steamer, resulting in injury, might have cast the responsibility upon the plaintiff; and as to comunicating the knowledge possessed by those in charge of the tow, it does not appear that it was practicable to do so. But we prefer to place the decision upon this part of the case upon the ground, that there was no legal duty on the part of the tow to either signal, or impart any information as to the channel (which those in charge possessed) to the St. John. A steamer with the full control of its machinery, desiring to pass a vessel, whether stationary or moving, must do so upon its own responsibility, and is bound to select its route at its peril. (1 Wall., 522, 146, 672; 18 How., 587, and cases there cited.) The St. John had access to all the knowledge which the tow had, and, in addition, had several days experience in sailing up and down that spring, which the latter had not. The principle that every person is bound to exercise reasonable care to protect his own property from injury, does not apply to the omissions complained of. First, because the St. John knew the exact position of the tow, and it was unnecessary to give any information on that subject, and because the tow had no reason to suppose that the eastward course of the St. John would result in an injury to any of its boats. The St. John drew less water than the McDonald, and it may have been supposed that she could pass on the east side, and if not, that she would ground. In a case where a warning is necessary to prevent a collision, to inform an approaching vessel of the presence of a stationary one,

which from darkness or other cause it could not discover, common prudence would dictate, and ordinary care demand that the warning should be given, if practicable. But it would be a dangerous rule, and lead to the greatest injustice, to hold a party liable for a mere omission to give information in a case like the one before us.

The statement and directions of the general agent of the defendant received in evidence, could have done no legal injury to the defendant on the trial, if inadmissible, restricted as they were to the question of damages, as there was no dispute on the trial as to the amount of damages.

The judgment must be affirmed.

All the judges concurring, except PECKHAM, J., who having been a member of the General Term below, did not sit.

Judgment affirmed.