### Sweeney *v.* New York Steam Co.

(*Common Pleas of New York City and County, General Term.* June 3, 1889.)

1. CONTRIBUTORY NEGLIGENCE—PROVINCE OF JURY.

In an action against a master for injury causing a servant's death it appeared that the servant was attending to a rope which guided a bucket that was being raised and lowered by steam power; that the rope caught him by the leg and raised him up in the air, and that on being suddenly lowered he was killed by the fall. *Held,* that whether decedent's negligence or that of the engineer was the proximate cause of the injury was for the jury. LARREMORE, C. J., dissenting.

2. TRIAL—INSTRUCTIONS—EVIDENCE.

A charge that if the jury believe that defendant had no notice of a certain fact plaintiff cannot recover is properly refused, where there is some evidence of such notice.

Appeal from trial term.

Action by Mary A. Sweeney, as administratrix of John Hanlon, deceased, against the New York Steam Company, for injuries causing the death of said Hanlon. Judgment for plaintiff. Defendant appeals.

Argued before LARREMORE, C. J., and BOOKSTAVER and ALLEN, JJ.
*James W. Hawes*, for appellant.   *Henry Schmitt*, for respondent.

BOOKSTAVER, J.   I cannot concur in the opinion of the learned chief judge
in this case.   Assuming, for the present, that the evidence conclusively es-
tablishes that the deceased's leg became entangled in the guy-rope managed
by him entirely through his own negligence or inexperience, and as a result
he was hoisted, head downwards, from 10 to 15 feet above the deck of the boat
on which he was working, it would not necessarily follow that his represent-
atives could not recover in this action; for it is well settled that an injured
party or his representatives may recover damages for an injury caused by de-
fendant's negligence, notwithstanding the injured party's own negligence ex-
posed him to the risk of the injury, if such injury was proximately caused by
the defendant's omissions to use ordinary care for the purpose of avoiding
the injury, after being aware of the danger.   *Austin* v. *Steam-Ship Co.*, 43
N. Y. 81; *Silliman* v. *Lewis*, 49 N. Y. 383; 1 Shear. & R. Neg. (4th Ed.) § 99,
and authorities there cited.
  The question then is whether the deceased's injuries were proximately
caused by his own negligence, or by the negligence of defendant or its serv-
ants.   Conceding his suspension was caused by his own act, he did not fall
because his weight drew his foot through the coil of rope by which he was
suspended, nor did he fall because of any exertion on his part, either of which
would have been his own act, and the proximate cause of his falling, nor did
he fall because the machinery employed was not calculated, and could not
reasonably have been required, to support his additional weight.   The learned
chief justice himself says the deceased hung suspended for a short time, and
"was unable to slide down the rope because it was wound around his leg."
So his falling into the hold of the boat, and consequent injuries, were not, and
could not have been, proximately caused by his suspension; those arose from
the rapidity with which he had dropped into the hold.   But the carelessness
of the deceased in the management of the guy-rope, by which he became en-
tangled, is the only negligence of the defendant relied on by the learned chief
judge to defeat his recovery.   Counsel for the appellant, upon the argument,
also claimed that if the lad in charge of the engine was so notoriously unfit
for the duty assigned him, then it was negligence on the part of Hanlon in
giving the direction to "lower him easy."   But granting that he was incom-
petent, there is no evidence in the case tending to show that the deceased
knew of this, for he had been at work for the defendant not more than 20
minutes when the accident happened, and consequently knowledge of incom-
petence will not be assumed in the absence of some proof of it.   It was also
claimed that the injuries resulted from the carelessness of a co-servant, for
which the defendant is not liable.   But a master owes the duty to his serv-
ants of employing skillful and competent workmen where these are needed to
direct their labor, or assist in the performance of their work, and the servants
have a right to assume that only such workmen are employed.   *Pantzar* v.
*Mining Co.*, 99 N. Y. 368, 2 N. E. Rep. 24; *Booth* v. *Railroad Co.*, 73 N. Y.
38; *Abel* v. *Canal Co.*, 103 N. Y. 581, 9 N. E. Rep. 325, and many cases
which might be cited.
  I therefore think the trial judge was right in refusing to dismiss the com-
plaint upon defendant's motion, either when plaintiff rested or at the close of
the case, and in leaving the question of the defendant's negligence to the jury,
as he was bound to do, and that the instructions given it on that subject were
correct.   Nor can I find any error in the judge's charge respecting the negli-
gence of the defendants.   He refused to charge "that there is no evidence of
any notice to the defendant, or to any of its officers responsible for its general
conduct, of the fact, if it be a fact, that the boy Crowley was allowed by the
engineer to have charge of the engine."   But he had already fully and cor-

rectly charged the jury on this point when he said: "If they [the company] employed a competent engineer, and they did not know he was transferring his duties to somebody else, they would not be liable; but if they permitted an incompetent person to share the duties of an engineer, then they would be liable. Baker and the engineer were, of course, not laborers like the deceased and Carroll and Nelliker. Their grades of employment were different, but they were, nevertheless, fellow-servants, and the negligence of a fellow-servant is one of the risks of the employment which every employé takes. It is the negligence of the master that must be established to make the master liable." And also defendant's request that if no notice was given to or received by an officer of the defendant, responsible for its general conduct, that the boy Crowley was running the engine, the plaintiff cannot recover. The request was also improper because it required the court to say that there was no evidence of any notice, whereas there was some proof upon that subject which brought it within the province of the jury to determine the fact, and it was not the province or duty of the court to do it for them.

The other exceptions to the charge are sufficiently noticed in what has been before said. They are based either upon the original negligence of the deceased, which as I think was not the proximate cause of the injuries, or upon the negligence of his fellow-servant, or upon the absence of proof when there was some evidence to go to the jury. The exceptions to the admission or rejection of evidence seem to me to be equally untenable, and the judgment should therefore be affirmed, with costs.

ALLEN, J., concurs.

LARREMORE, C. J., (*dissenting.*) On the 25th of January, 1884, plaintiff's intestate was employed by an employé of defendant to assist in the unloading of coal belonging to defendant from a canal-boat lying at a dock in the North river. The tackle used, including the hoisting power furnished by a steam-engine, belonged to defendant. The work that said intestate undertook to perform was to "tend guy-rope,"—that is, by means of a rope that was part of the tackle to steer the buckets of coal as they were raised or lowered, and prevent them from striking against the boat and the dock in transit. Plaintiff's proof shows that, after the intestate had been so engaged for about 12 minutes, by some unexplained means said guy-rope caught said intestate's leg, and, taking two or three turns around it, carried him up, head downward, with a rising bucket, from 10 to 15 feet above the deck. He hung suspended for a short period, being unable to slide down the rope because it was wound round his leg. It appears that he called to the person in charge of the engine to lower him slowly, and, further, that it would have been possible to let him down so gradually that no injury would have resulted. But the person at the time in charge of the engine was not the regular engineer, but a boy about 16 years of age, whom the engineer had deputed to take his place. It is alleged that said boy was incompetent, and that he moreover became frightened, and, instead of lowering slowly, adjusted the engine so that said intestate fell with the bucket into the hold of the boat, sustaining injuries whereof he died.

The theory upon which plaintiff claims to recover is that defendant is chargeable with notice of the fact that the engineer was in the habit of allowing this boy to take his place, and that therefore it knowingly suffered an incompetent person to operate dangerous machinery, and is liable for the consequences. But it is unnecessary for us to discuss this question, for the reason that, if all that plaintiff contends for were allowed, the case is fatally defective, because there is nothing that shows, or tends to show, the absence of contributory negligence. On the contrary, such facts as do appear raise a strong presumption that the accident could not have happened unless the intestate

had been negligent. Ordinarily, in an action brought by the representatives of a deceased person, who came to his death through such a casualty, the court would incline to be as indulgent as possible in the matter of affirmative proof of this negative. The law does require some evidence that the injured man was not negligent. But where his lips are closed by death, and no other person is acquainted with every minute occurrence at the time, courts will lean towards accepting slight circumstances tending to show absence of contributory negligence as sufficient to make out a *prima facie* case. But no such favorable presumptions can be entertained in the case at bar. The deceased had sole charge of the guy-rope. No other person interfered with him in the discharge of his duty. To tend said rope was, moreover, his only duty. He was to give his undivided attention to its management, and, as there was nobody with whom he could divide the responsibility, if anything went wrong in connection with it, the only possible inference to be drawn is that it was through his own negligent performance of his work that the rope became twined about his leg.

It is not shown that the bucket was being raised at an unusual or negligent rate of speed at the time of the mishap. Plaintiff relies solely on the fact that it was improperly and carelessly lowered, and of this there can be little doubt. If it appeared affirmatively that the bucket was elevated by the boy at a very rapid speed, it might be argued that the intestate did not have time to free himself from the coils of rope. I have not overlooked the testimony of the witness Nelliker, viz.: "The boy raised and lowered the tub differently from what it is done by the engineer. Sometimes he ran it away up quick, and then down with a run, and stopped it short, and he would laugh at us jumping away." This refers merely to an occasional practice. There is no testimony that the bucket had been raised too quickly on the day of the accident. The reason for the rapid lowering, then, was the boy's sudden agitation at seeing the man suspended in air, and not any disposition to indulge in levity.

We arrive at our conclusion from a consideration of plaintiff's own evidence. One necessary link in the chain of causation preceding the accident was the intestate's negligently allowing himself to be caught by the guy-rope. Though we have not relied at all on the evidence of defendant's witness Mangam, yet we would advert to it here as confirmatory and corroborative of the result reached. He testifies that he spoke with the intestate immediately after the accident, and that the latter said: "I got a little crack on the head. It don't amount to much. It was my own fault; if I had been attending to my business it would not have happened." It follows that the complaint should have been dismissed, and the judgment appealed from should be reversed, and a new trial ordered, with costs to appellant to abide the event.