The motion to dismiss the complaint, made by the defendants at the close of the plaintiff's testimony, presented the question whether there was any evidence tending to show that a contract was made, but nothing else. Crane v. Powell, 139 N. Y. 384, 34 N. E. 912. Upon the denial of the motion to dismiss the complaint, defendants moved to amend their answer by pleading that the contract was void by the statute of frauds, and to the denial of this motion the defendants excepted. We are of the opinion that the ruling of the court upon this motion was proper. The defendants must have known of this defense when their answer was prepared. They knew, of course, that the contract that they had with the city was for five years, and they must have known that an agreement with the plaintiff for the life of that contract was also for the term of five years. Although they had not pleaded the statute, it was still possible for them to have raised the question on the trial that the contract was void, by objecting to the oral testimony given to establish it. But, when they failed to object to that testimony, and permitted the plaintiff to prove his agreement by oral evidence, we think they waived the provisions of the statute, and that the court properly denied the motion to amend the answer. It is also doubtful whether the court had power, under section 723 of the Civil Code, to grant the motion, as to have done so would have changed substantially the defense.

The judgment and order must be affirmed, with costs. All concur.

---

### MacMAHON v. BROOKLYN & N. Y. FERRY CO.

(Supreme Court, Appellate Division, Second Department. November 20, 1896.)

1. NEGLIGENCE—COLLISION WITH FERRYBOAT.
    A ferry company is liable when a collision, which the pilot of its ferryboat could have avoided by reasonable care, causes the death of one of the crew of a launch, though the ferryboat was in her usual course, and the crew of the launch did not observe the rules of navigation.

2. APPEAL—HARMLESS ERROR.
    It is not error prejudicial to defendant for the court to test the eyesight of the pilot in charge of defendant's steamer when an accident occurred, where such pilot is introduced by defendant, and testifies as to his eyesight, since his eyesight at the time of the trial is immaterial, unless as good as when the accident occurred.

Appeal from trial term, Kings county.

Action by Katie J. MacMahon, as administratrix of John Joseph MacMahon, deceased, against the Brooklyn & New York Ferry Company, to recover damages for the death of plaintiff's intestate. From a judgment for $21,000 damages, $934.50 interest thereon, and $1,238.15 costs, entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial made on the minutes, defendant appeals. Affirmed.

Argued before BROWN, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

James & Thomas H. Troy, for appellant.
Charles J. Patterson, for respondent.

BRADLEY, J.   On the evening of July 21, 1895, the plaintiff's intestate, with John Williamson and Charles L. McCann, was in a steam launch, with which the defendant's ferryboat collided, in the East river, and his death by drowning resulted from the collision. The plaintiff charges that the accident was attributable solely to the negligence of the defendant.   Much, and some conflicting, evidence was introduced as to the circumstances and attending conditions under which it occurred, bearing upon the issues presented for trial. Those three gentlemen embarked in the launch at the Wallabout Basin, and proceeded up the Brooklyn side of East river to a slip at the foot of South Second street, passing several ferry slips, including that of the Twenty-Third Street Ferry.   After remaining there for a time they proceeded to return.   There was a strong flood tide, which retarded the progress of the launch, so that it proceeded very slowly.   It was a small boat, evidently having weak motive power. When it came near to the Twenty-Third Street Ferry slip (its then particular locality does not very clearly appear), Williamson testified that he saw the ferryboat distant 450 feet, coming down the river, headed towards the Brooklyn shore, and at some point below that slip, until after it came within 200 feet of the launch; that when at that distance the launch whistle was blown, and blown repeatedly. The course of the ferryboat very shortly after was turned in the direction of the Twenty-Third Street Ferry slip.   The launch was in front of it, and thereupon Williamson ineffectually attempted to reverse the engine, and go with the tide out of the way.   Failing in that, he directed the use of the hand oars, which were brought into requisition for a momentary or brief space of time, when the ferryboat came on to the launch.   Williamson and McCann were taken aboard the ferryboat.

An important fact, bearing upon the question of the alleged negligence of the defendant, was whether or not it was daylight at the time the ferryboat approached the place of the occurrence.   There was a marked conflict in the testimony of witnesses on that subject. That of the pilot on the ferryboat was to the effect that, although he heard the whistle, he did not see the launch until he came within 50 feet of it, and that up to that time he had seen nothing to deter him from proceeding into the slip by reason of the darkness; that, if he had seen it at 200 feet from the slip, the course of the ferryboat was such that he could have avoided the collision.   Other witnesses testified that it was cloudy, and had then become dark, or partially dark, so as to render the view of objects at much distance dependent upon artificial light.   And in support of this fact evidence on the part of the defense was given tending to prove that it was 8 o'clock, and after.   The sun set on that day at 26 minutes past 7 o'clock. On the part of the plaintiff evidence was given to the effect that, at the time of the accident, it was not later than half past 7 o'clock and that it was daylight,—"perfectly clear daylight."   Some of the passengers on the ferryboat testified that the launch was plainly

visible, and seen by them when the ferryboat was more than 200 feet from it; and some others, who were on the Brooklyn shore, and much further than that from the launch, testified to the same effect. In view of the evidence, the question whether the pilot of the ferryboat ought to have seen the launch when its whistle was first blown, if not before, was one of fact for the jury, as was also that of negligence of the defendant, in consequence of its failure or omission to observe the launch, and the danger of its occupants, if the ferryboat proceeded into the slip, and to avoid the collision, and the consequences which followed.

It is urged with much force by the counsel for the defendant that the plaintiff failed to prove that the death of the plaintiff's intestate was not attributable to the negligence of the persons on the launch, or of some of them, or that such negligence did not contribute to the accident. It may be that they were so situated, when the ferryboat was seen 450 feet away, that if they had supposed that it was destined for the slip which it entered they may have avoided it, although there is some evidence which may be construed to import the contrary. But it may now be assumed, upon the evidence, that they did not know that the ferryboat was on its way to that slip, and that they were led to suppose she was not because her bow was headed towards some place below that slip on the Brooklyn side of the river. The pilot says the course of the boat was not in line with the slip, but was towards the Navy Yard below, until within 200 feet of the slip, and then turned to port towards it, which was his usual method of doing it, and he then saw nothing in the way. They had no lantern on the launch. There was one on her when they started up the river, but it had been lost. None, however, was necessary at the time in question, if it was then clear daylight. Those persons in the launch were not expert navigators. Neither of them had before had much experience in running a boat. Williamson was an engineer, accustomed to running engines. The engine and sidewheel propellers of the launch were somewhat peculiar. It was a new design of his own. He, prior to this time, had run the boat some on the river, but not in that locality. This was a pleasure trip. He ran the engine, and MacMahon steered, with the tiller, at the stern. McCann occupied a seat in the bow.

It is said that they had failed to observe the requirements of the federal statutes relating to navigation, in respect to licensed skill requisite, and in other respects. Those are matters entitled to consideration, but default in that regard does not necessarily, under all circumstances, impute to a party contributory negligence, and deny to him relief for injury resulting from the negligence of another. Nor will a vessel be excused, if it fail to adopt reasonable precautionary means to avoid collision with another, although, by the rules of navigation, she would otherwise have the right to keep her course. If, therefore, by the exercise of reasonable care, the running against the launch may have been avoided by the pilot of the ferryboat, the defendant was not relieved from liability by the mere fact that those rules were not observed in the means or method of navigation of the launch, although the

former was in her usual course, and as she otherwise would have been entitled to run. The Sunnyside, 91 U. S. 208; Cooper v. Transportation Co., 75 N. Y. 116. It is true that those in the launch knew that ferryboats were going from and coming into the slips on the Brooklyn side every few minutes, and, as a boat had recently gone out of the Twenty-Third Street Ferry slip they had reason to suppose that another would shortly return to it; and, when they got outside the pier, to go down the river, they must have observed that the tide was so strong that it was difficult for the small boat to run against it,—at all events, with much headway. If dark, or less than twilight, it would seem, without any artificial light on the boat, to have been quite hazardous for them to proceed with it. But, assuming, as we may, upon the findings of the jury, that it was daylight, they were entitled, in addition to their own efforts, to the reasonable care and precaution of the ferryboat pilots for protection against danger from them. When the ferryboat veered to port, and thus changed its course to proceed into the slip, the launch was in front of it, and the reversal of her engine not being available to push her back with the tide, she became apparently helpless for her own protection against the approaching ferryboat. At least, such conclusion was permitted by the evidence. It may have been by the want of reasonable precaution that the launch got into the position and place in which it was at that time, and those having her in charge may not have exercised the best judgment in the attempt to get her away from the course to the slip after the ferryboat had turned in that direction; but the fault in navigation of the launch, which placed her in that relative position did not, nor did such error in judgment necessarily, render the accident attributable to the contributory negligence of those in her. The situation may be viewed as it existed just before and at the time the ferryboat turned its course to the slip. Her pilot had no right to run into the launch, if he saw and could reasonably have avoided her; nor was the defendant necessarily, by the circumstances before mentioned, relieved from the charge that its negligence was solely the cause of the calamity, and from liability as the consequence, if its pilot, by the exercise of reasonable care, would have seen and avoided the collision which resulted in the death of the plaintiff's intestate. Austin v. Steamboat Co., 43 N. Y. 73; Hoffman v. Ferry Co., 47 N. Y. 176, 58 N. Y. 385; Blanchard v. Steamboat Co., 59 N. Y. 292; Harris v. Uebelhoer, 75 N. Y. 169; Minerly v. Ferry Co., 56 Hun, 113, 9 N. Y. Supp. 104.

The examination of the record leads to the conclusion that the jury were permitted to find that the facts essential to the plaintiff's recovery had the support of the weight of the evidence, and therefore the motion to dismiss the complaint was properly denied.

The defendant's counsel complains of inquiries made by the court of the pilot of the ferryboat, while he was on the stand as a witness, to test his power of vision. This witness, having stated that he was 61 years of age, and could at the time of the trial see "all over," and "further than some young men," his attention was

called by the court to some printed objects and figures in the court room, and inquiries made of him to test his eyesight, to which no objection was taken. His ability or inability to see objects at that time, nine months after the occurrence in question, was not a relevant fact, unless his eyesight was as good at the later as at the other time. The import of the testimony of the witness which led to this further inquiry by the court was that his power of vision was unimpaired and remarkably good at the time he was testifying. We think there was no error to the prejudice of the defendant in the examination of the witness by the justice presiding at the trial.

The case seems to have been fairly submitted to the jury, and none of the exceptions to charge as made were well taken. The verdict was quite large in amount, but, in view of the age, character, habits, and business capacity of the deceased, as they appeared by the evidence to have been, of the age of his children, and of the income derived from his services and business occupation, it cannot well be seen that the damages were excessive, or more than the jury were warranted in finding that his widow and next of kin, who were dependent upon him for their support and education, had sustained pecuniarily by the death of the plaintiff's intestate.

The judgment and order should be affirmed. All concur.