## HOES v. EDISON GENERAL ELECTRIC CO.

(Supreme Court, Appellate Division, First Department. December 10, 1897.)

NEGLIGENCE—CHOOSING DANGEROUS WAY.

Where there are two means of communication between different portions of a cellar, one of which is through an elevator shaft, and obviously dangerous, and the other safe, a person who deliberately chooses the dangerous one in order to save a few steps, and is there injured by a falling roller, is guilty of contributory negligence, and none the less so because, upon entering, he looked up. Barrett and Rumsey, JJ., dissenting.

Appeal from trial term.

Action by William M. Hoes, as public administrator in the city
of New York, and as administrator de bonis non of the goods, chattels, and credits of Carl Burk, deceased, against the Edison General
Electric Company. From a judgment dismissing the complaint,
plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY,
O'BRIEN, and INGRAHAM, JJ.

Frederick W. Holls, for appellant.
Eugene H. Lewis, for respondent.

INGRAHAM, J. This action was commenced by the administrator of Carl Burk to recover the damages sustained by his next of kin
by his death. The defendant was engaged in supplying certain
machinery to the brewery of George Ringler & Co., in the city of
New York, in which brewery the plaintiff's intestate was a workman.
It is claimed that while the defendant was engaged in moving some
machinery by the elevator in the brewery, through the negligence
or carelessness of some of its servants or employés, a roller used
to move the machinery was allowed to fall down an elevator shaft,
and strike the plaintiff's intestate upon the head as he was passing
through the shaft, causing his death. Upon the trial, the court
dismissed the complaint, upon the ground that the plaintiff failed to
maintain the burden of proving that the deceased came to harm without negligence upon his part; and judgment was entered upon such
dismissal, from which the plaintiff appealed. The case was once
before tried, when the plaintiff obtained a verdict, but on appeal
the judgment entered upon that verdict was reversed, upon the
ground that the plaintiff's intestate's negligence contributed to the
injury. See Burk v. Electric Co., 89 Hun, 499, 35 N. Y. Supp. 313.
With the exception of one fact testified to, and which will be alluded
to, the evidence was the same as upon the former trial. Upon the
former appeal it was held that the action of the plaintiff's intestate
in passing through this elevator shaft, instead of taking the passage
outside of the shaft provided by the proprietor of the brewery for
the use of its employés, was obviously dangerous; and that the person thus using this elevator shaft took upon himself the risk of the
happening of an accident like the one which resulted in the death
of the plaintiff's intestate, for which no cause of action existed
against the person who was responsible for the act which resulted
in the injury. We must take the decision of the general term upon
the former appeal as the law of this case, unless it appears that it
was obviously based upon a misconception of the facts, or was
clearly erroneous.

The defendant was engaged in using an elevator upon the brewery
premises, performing certain work for the brewery. This elevator
was used for the transportation of articles of merchandise from
one floor of the brewery to another. The elevator shaft ended in
the cellar of the building, and the elevator was so constructed that
there was sufficient space between it and the side of the shaft to
allow articles to fall from the elevator down the shaft. The plaintiff's intestate was an employé of the proprietors of the brewery,

and was at work in the cellar, in connection with the brewery business. He left his place of work for the purpose of getting some beer; and, in going to the place where the beer was kept, he passed, not through the elevator shaft, but through the passageway provided by the proprietors of the brewery for the use of their employés. In returning, however, to his work, instead of using this passage for that purpose, which was perfectly safe, he concluded to pass through this elevator shaft. The only excuse given for using the elevator shaft was that it saved a few feet in the distance from the place where the beer was and the place where the plaintiff's intestate and his associates were at work. There was a rule of the brewery that this passage through the elevator shaft should not be used, it having been built, not for the purpose of use as a passage, but for the purpose of introducing a hose connected with the brewery business, though it does not affirmatively appear that the deceased had notice of this rule. Now, this passage through the elevator shaft was one of obvious danger. The elevator was constructed for the purpose of transporting merchandise from one floor to another, in such a way that there was a space between the elevator and the side of the shaft which allowed articles to fall from the elevator down the shaft. It was in use at the time, and, as the plaintiff's intestate was employed in the building, he must be assumed, at least, to have had knowledge of the situation and the use to which this elevator was put. His associates, however, had knowledge of the rule not to use the shaft, and the evidence shows that, when it was violated by the employés of the brewery, it was when the foreman and those charged with the conduct of the brewery were not present. As before stated, the use of this shaft as a way of passage was obviously dangerous. It did not require any special knowledge for a workman in the brewery to understand that articles were liable to fall from this elevator, or that it was possible for the elevator itself to come down and injure one standing under it. It is not shown that the defendant had any knowledge of the fact that this passageway existed; that it was ever used by any one; or that there would be any injury as the result of a piece of their machinery falling down the elevator shaft, other than that the piece of machinery would have to be raised from the bottom of the shaft. The plaintiff's intestate, however, was working in the building, and must have had knowledge of the danger incident to the use of this elevator shaft. He knew that another passageway was provided for the use of those employed in the brewery, and he had taken that passage where he was safe but a few moments before. He then voluntarily exposed himself in a dangerous situation, without necessity, without in any way giving notice to those engaged in using the elevator, and only to save himself the necessity of walking a short distance. It seems to me quite clear that, under these circumstances, the decision of the general term upon the former appeal was right; that, by voluntarily placing himself in this position of danger, the plaintiff's intestate assumed the risks incident to the situation in which he placed himself; and that any injury he sustained was the result of his own carelessness.

It must, I think, be conceded, that if the plaintiff's intestate, in placing himself in this position of danger, had been injured by the elevator suddenly descending, where no notice had been given to those operating the elevator that he was in this elevator shaft, there would be no liability on the part of those operating the elevator or responsible for its management. It must also, I think, follow that if those in charge of the elevator had allowed some article to drop from the elevator, and injure the plaintiff's intestate, the result would be the same. The injury would result from the plaintiff's intestate voluntarily placing himself in this elevator shaft, in violation of the rules of the brewery. But in what respect was this defendant to incur any greater liability than would the proprietor of the brewery if he had been using the elevator at the time? There is not the slightest evidence to show that the defendant or its employés had any knowledge of the existence of this passage, or that any one ever used the elevator shaft for any purpose, except that of operating the elevator. The notice which was given to the defendant's foreman, that a part of the machinery was liable to fall down the shaft, was not a notice that the result of such a mishap would injure the plaintiff's intestate, or any one else. Before the defendant's foreman placed the machinery upon the elevator, he was advised by the chief engineer of the brewery to put boards down upon the floor of the elevator, and to haul the machine up to the floor on the elevator, to which the foreman replied that that was his (the foreman's) business. The engineer then called his attention to the space between the edge of the elevator and the sill of the door, and told the defendant's foreman that "this roller will fall down; the roller is smaller than the space." The defendant's employés then continued to roll the machinery, and, when it arrived about three inches from the elevator shaft, the engineer of the brewery saw a light downstairs in the elevator shaft, and called out: "Look out! There is a machine hoisting up." The engineer then said to the defendant's foreman: "Look out for your rollers! Your rollers will fall down." They then rolled the machine inside the elevator, and the roller fell down. There is here no evidence that there was any notification to the defendant or its employés that there was anybody in the bottom of the shaft. As the machinery was just about to be placed upon the elevator, the engineer gave a notice to look out, that the machinery was being hoisted up, thus giving notice of danger to any one in the vicinity; but this notice was not a notice that any one was in the shaft. The defendant's employés, in using this elevator as they did, were certainly under no greater obligation to the employés of the brewery than their master was; and I think it must be conceded that, if the master had been employed in using this elevator at the time, he would not have been responsible. But the question is not as to the negligence of the defendant, but as to the contributory negligence of the plaintiff's intestate. It was certainly as dangerous a situation when the elevator was being used by the people engaged in the business of the brewery as when it was used by the defendant in doing work under a contract in the brewery. Assume that the defendant was guilty

of negligence,—gross negligence, if you will,—to entitle the plaintiff to recover, the burden is upon him to show that the deceased was without negligence that contributed to the injury; and when it appears from the plaintiff's own testimony that the deceased voluntarily placed himself at the bottom of this elevator shaft, when the elevator was in use, having to crawl through a hole provided, not as a passageway, but to conduct a hose from one cellar to the other, and when it was understood between the employés, for their own security, that it was not the usual way to go through, it would seem to me clear that the evidence did not show the absence of contributory negligence on the part of the plaintiff's intestate, but that it affirmatively appeared that the injury was caused by his negligence in unnecessarily placing himself in a position of danger, the risk of which was voluntarily assumed by him.

The rule that a person non sui juris, who could not be expected to understand the risks incident to a dangerous locality, was not chargeable with such knowledge, and did not take upon himself the risks incident to a dangerous position voluntarily assumed, cannot be applied in the case of a workman in full possession of his faculties, employed in a building in which the dangerous situation existed, and which was as apparent to one person as another, and where he places himself in such a dangerous situation voluntarily, without any necessity imposed upon him by the performance of the work upon which he was engaged and in violation of the rules of his employer. The danger of a piece of machinery falling down this elevator shaft was as apparent to any workman, so long as he had possession of his senses, as it was to the most skilled employé; and for a man with such knowledge voluntarily to place himself in a position of danger underneath an elevator engaged in moving heavy articles of merchandise, where no necessity exists, cannot be said to be an act of prudence, or one that places upon a person using the elevator a liability for an accident that happens in consequence of such voluntary act of the person injured. We think, therefore, that the decision of the general term upon the facts before it was clearly right.

The only evidence adduced upon this trial not before the court on the former trial was that the plaintiff's intestate, before he entered this elevator shaft, or just after he entered it, looked up, and then proceeded on his way under the elevator across the shaft; but the negligence attributed to him, or rather the fact that he assumed any risk incident to the use of this elevator by voluntarily using the elevator shaft as a way of passage, did not depend upon his looking or not looking before he entered the shaft. It was his using it at all, for the purpose which he did, that precludes a recovery. It was negligence for him to use it without looking, and it was none the less negligence to use it after having looked. The time that it would take a heavy article to fall from the position that this elevator was in—and, if the plaintiff's intestate had looked, he must have seen where the elevator was—would be so short that the danger would not be from an article that was falling before and at the moment when he entered the shaft. At the time this

piece of machinery fell, the defendant's men were engaged in rolling it from the yard of the brewery into the elevator. The cellar was below, where the plaintiff's intestate was at work washing out barrels. Any heavy piece of machinery falling from this elevator would strike a person using the elevator shaft long before he could see it and get out of the way, even if looking at the time it fell. It was the use of the elevator shaft at all for the purpose of passage, while the elevator was in use, that was dangerous; and, as the plaintiff's intestate voluntarily put himself in the position of danger, he must be held to have voluntarily assumed the risk, which was an incident of being in the position in which he so voluntarily placed himself.

I think the judgment below was right, and it should be affirmed, with costs.

VAN BRUNT, P. J., and O'BRIEN, J., concur.

BARRETT, J. (dissenting). The plaintiff's intestate, Carl Burk, was an employé in the brewery of George Ringler & Co. On September 27, 1892, the defendant was engaged in installing an electric light plant in the building. While its employés were loading a piece of machinery upon the elevator at the first floor, they allowed a heavy roller, which was being used in the work, to fall through a space of about four or five inches between the elevator and the landing. This roller struck and killed Burk, who was passing through the elevator shaft in the cellar. It was shown that the chief engineer of the brewery warned the defendant's foreman, Oakley, about this space; told him that the roller might fall down; advised the placing of boards between the elevator and the landing; and, seeing a light somewhere below, called down that a piece of machinery was being hoisted. In the face of all this, Oakley rejected the advice, with the result stated. Burk, in company with another workman, Wiedemann, was using the shaft as a passageway between the east and west divisions of the cellar, which were separated by a wall. They both looked up before attempting to pass through, saw that the elevator was at the first floor and stationary, and thought that they were safe. Wiedemann got through without injury, but Burk, a few feet behind, was struck down by the roller. It appeared that employés were warned against using the shaft, but that there was no printed or posted rule forbidding it.

On a former appeal by the defendant, a judgment for the plaintiff was reversed by the late general term for this department, on the ground that the deceased was guilty of contributory negligence. Burk v. Electric Co., 89 Hun, 498, 35 N. Y. Supp. 313. The gist of the decision is contained in the following sentence:

"If one, without need or cause, puts himself in a position of apparent danger, and while in that position suffers an injury, resulting in death, it cannot be maintained that he has not contributed to such injury."

If this view is binding upon the plaintiff, it is quite clear that there can be no recovery. With the exception of the evidence that Burk looked up before attempting to pass through the shaft, the proof is

the same now as then.    If he should have foreseen a danger such as this, and was negligent in encountering it, then his action in looking up cannot aid him, since this precaution would not have enabled him, as in fact it did not, to avoid being struck by a heavy object falling such a short distance.

It is thus necessary to determine, at the outset, whether the general term decision must be deemed controlling.    It seems plain that it should not.    The order of reversal was entered in October, 1895. At that time an appeal to the court of appeals from a judgment of the general term in an action for personal injuries was a matter of right.    By an amendment to the Code, made in 1896 (Laws 1896, c. 559), no appeal is permitted from a unanimous judgment of affirmance by the appellate division in such a case, without a certificate allowing it (section 191, subd. 2).    Consequently, the appellate division and the late general term cannot, for the purposes of this appeal, be treated as courts of co-equal jurisdiction.    The rule that a prior decision will not be reconsidered in the same action is applicable not only where the case comes up for the second time before the same court, but also where the prior decision was made by a court exercising the same powers and jurisdiction.    Thus, it has been applied as between the commission of appeals and the court of appeals and the First and Second divisions of that court.    Terry v. Wait, 56 N. Y. 91; Cluff v. Day, 141 N. Y. 580, 36 N. E. 182. It has never, so far as we know, been applied where the second court exercises a greater power than the first.    The decision of the second court being final, while that of the first was not, the second is, to all intents and purposes, a court of review.    If the judgment here should be affirmed simply on the strength of the general term ruling, the plaintiff might have a final judgment against him rendered, practically by a court not possessing final jurisdiction.    The fact that the judgment of this court is not necessarily final, since the decision might not be unanimous, or a certificate of appeal might be allowed, should not alter the result.    When the appeal is heard, these matters are in doubt, and the possibility of a final judgment is enough to entitle the plaintiff to a full rehearing on the merits.    A prior decision of the general term, so far as applicable, was held to the law of the case in Fennessy v. Ross, 5 App. Div. 342, 39 N. Y. Supp. 323; but there a demurrer was under consideration, and the judgment of the general term in such a case was appealable only by permission, the same as a judgment of the appellate division now. Johnson v. Signal Co., 125 N. Y. 720, 26 N. E. 455.

The ground previously taken for reversal, and that now principally urged for affirmance, is the contributory negligence of the deceased.    Counsel for the defendant contend, in substance, that he voluntarily placed himself in a position of danger, without necessity, and that this bars a recovery.    It must be granted, at the outset, that the attendant circumstances furnished Burk with no adequate excuse for putting himself in a position of peril.    He was taking a short cut from the east to the west section of the cellar.    He might have utilized a hole in the wall not far from the elevator, or he might have gone to a door some 36 feet away.    In either case he would,

so far as appears, have been perfectly safe. The slight additional time and trouble involved in either of these courses was no excuse for taking a deliberate risk. But the question remains, did he take a deliberate risk? It has been reiterated many times, and with much emphasis, that the elevator shaft was a place of obvious danger. In a sense that is true. Any one passing through ran a risk, ordinarily, of being struck by the descending elevator, or by articles which might fall down the shaft from the various landings of the building. These risks may fairly be said to have been incident to the situation, and, if Burk's injury had been due to one of these causes, it seems quite plain that the plaintiff could not recover. Burk was, however, not injured in any such manner. On the contrary, he took pains to see that he could not be thus injured. He looked, and found that the elevator was at the first floor landing and stationary. The respondent concedes, and the drawings show, that it was over 30 feet above him. It was a fair inference that it could not descend in time to strike him. Then, too, this situation of the elevator prevented the deceased from being struck by objects above the first landing; and there was no spot below it from which any article could fall. It is true, as we have suggested, that the deceased took all the risks flowing from the ordinary course of the brewery business. But he took no such risks from extraneous and abnormal incidents. As to the unusual circumstances existing at the time, there is nothing to indicate that Burk had the slightest knowledge of them.

And this leads us to the point upon which, we think, the defendant's counsel are in error. A place may be a place of danger at some time, and not at others. There are few places of which this is not true. The vicinity of a lot upon which blasting is being done is extremely dangerous at times; but it will hardly be contended that a pedestrian, from the mere fact of passing it, instead of going up a by-street, forfeits all right to recover for injuries caused by a negligent blast. In the sense in which the term has been used, a railroad crossing is a place of danger, for the greatest risks may often be run there. But is there to be no recovery for the negligence, for instance, of a gateman stationed at a crossing, simply because the driver of an injured vehicle might have utilized a neighboring bridge over the track, and passed over it in unquestioned security? It may be said that these illustrations differ from the present case, and they do. A citizen has undoubtedly a greater right upon a public street or roadway than the deceased had in the elevator shaft, since the streets are meant for the public use, while the shaft was being put to a use for which it was not intended. This consideration is entitled to great weight upon the question of the defendant's negligence, and will be there considered; but it merely leads to confusion in connection with the question of the deceased's contributory negligence.

A careful examination of the case cited for the defendant and many others strengthens our belief that, wherever a plaintiff has been held guilty of contributory negligence, the ultimate cause of the injury was apparent and threatening when he took the disas-

trous step or omitted the reasonable precaution, or that he was subsequently guilty of further negligent conduct which aided in causing the mishap. See Coleman v. Railroad Co., 114 N. Y. 609, 21 N. E. 1064; Whalen v. Gaslight Co., 151 N. Y. 70, 45 N. E. 363; Weston v. City of Troy, 139 N. Y. 281, 34 N. E. 780; Brennan v. City of New York (Sup.) 22 N. Y. Supp. 304; Knox v. Power Co. (Sup.) 23 N. Y. Supp. 490; Kuhnen v. Railway Co., 10 App. Div. 195, 41 N. Y. Supp. 774; Clark v. Railroad Co., 36 N. Y. 135, 136. It seems a necessity that this should be so when it is considered in what negligence consists. It may be defined with reasonable accuracy as the incurring of a danger, either by act or omission, with knowledge thereof, or sufficient means of knowledge, and without legal excuse. The only risk which the deceased ran was the fall of the roller, and this was as to him a hidden risk; in other words, a risk of which he had neither knowledge nor means of knowledge. He discovered by examination that the dangers ordinarily incident to the situation did not then exist. Hence the situation was one of apparent safety,—quite as much so as though danger never attended it. He looked for danger, and to all appearance there was none. To hold that, because one goes to a place which is perilous at times, he assumes the risk of injury from every cause, open or hidden, not reasonably to be expected or impossible to foresee, would be to lay down a doctrine which would make the injured party practically an outlaw; and this for no adequate fault,—indeed, for no fault at all. The most that can be said regarding one like Burk is that he did not exercise the highest degree of care,—did not take every possible step to avoid injury. But that is not required. There may be a recovery if he fell short of this standard, but exercised reasonable care in view of all the circumstances. Ernst v. Railroad Co., 35 N. Y. 9; Fero v. Railroad Co., 22 N. Y. 209. That question is ordinarily for the jury, and cannot be taken away from them here. It should be added that this result is not changed by the alleged rule of the brewery regarding the use of the elevator shaft. That amounted to nothing more than a warning to the employés against the very dangers which, without such a warning, they would have been bound to avoid; namely, the dangers incident to the ordinary course of the brewery business.

The remaining question is whether the defendant was guilty of negligence with regard to the deceased. It must be conceded that the presence of the deceased in the shaft was not to be anticipated, and that the defendant's servants were not bound to regulate their conduct upon the assumption that some of the employés of the brewery might go there. In other words, the defendant's employés were under no duty of active vigilance to ascertain whether some employés of the brewery might possibly be below. Even if the defendant's servants with knowledge of the fact that the employés of the brewery occasionally used the shaft had placed the roller in the elevator, and some cause had started it rolling, so that it fell down the shaft during their temporary absence, with resultant injury, we think that no recovery could be had. That would merely be a failure to exercise active vigilance. It is well settled, however,

that one is liable for negligent acts constituting the sole proximate
cause of injury to another, although that other got into the place
where he was injured through his own carelessness, or had no affirm-
ative right to be there.   Austin v. Steamboat Co., 43 N. Y. 75; Barry
v. Railroad Co., 92 N. Y. 289; remarks of Earl, C. J., in Nicholson
v. Railway Co., 41 N. Y. 538–539; Shear. & R. Neg. § 99.  ·The de-
ceased here was not a trespasser.   If he was warned against the .
shaft, it was only because of the danger which existed there at times.
He was notified, in effect, that, if he went there, he assumed the
risks incident to the situation.   The active negligence of his em-
ployers was not one of these risks.   Knowing him to be there, they
were bound to use reasonable care to refrain from injuring him;
and they could not escape such duty by even a positive injunction
against his going there.   The defendant stands in no better position
than the employers of the deceased.

   Turning to the evidence, we find that it justifies an inference of
direct negligent acts committed against the deceased, with knowl-
edge or notice that he was in the shaft.   The defendant's foreman,
Oakley, could not have failed to understand the situation from what
the engineer of the brewery, Hoenig, said and did.   Hoenig had al-
ready pointed out to Oakley the dangerous interstice, and had warned
him of the hazard attendant upon his mode of action.   Not only that,
but, seeing a light downstairs in the elevator shaft, Hoenig actually
"halloed" down "Look out!   There is a machine hoisting up."   Oak-
ley may have seen the light as well as Hoenig.   He certainly saw
Hoenig looking down, and heard him shout out what was apparently
a warning to some one below.   Immediately after so shouting, Hoe-
nig again turned to Oakley, and repeated his former warning: "Look
out for your rollers!   Your rollers will fall down."   The jury might
fairly have paraphrased all this as equivalent to Hoenig's saying
to Oakley: "There is probably some one below.   You have heard
me shouting a warning to whoever it may be.   Look out that your
rollers do not fall down and injure that person."   Thus, if Oakley
did not have direct knowledge that Burk was underneath, at least
it might have been found that he continued on his reckless course
in the face of circumstances sufficient to put him upon inquiry, and
deliberately took the chance of injuring the deceased in case it turned
out that he was there.   If such inferences had been drawn by the
jury (and they were permissible), the plaintiff was entitled to re-
cover.   It should be added that the warning shouted down the
shaft was not heard by Wiedemann (Burk's companion), and presum-
ably not by Burk himself.   If otherwise, it would still be a question
of fact whether this warning adequately conveyed to them notice of
the danger which actually threatened.

   The judgment should be reversed, and a new trial ordered, with
costs to the appellant to abide the event.

RUMSEY, J., concurs.