RATHBONE *v.* DETROIT UNITED RAILWAY.

1. TRIAL—VERDICT—SURPLUSAGE—JUDGMENT.

    If the verdict finds the issue and something more, the latter part of the finding will be rejected as surplusage, and judgment rendered independently of the unnecessary matter.

2. SAME—JOINT AND SEVERAL VERDICT—JUDGMENT.

    Where the jury returned a verdict for $10,000 against joint defendants and apportioned $6,000 of the amount against appellant, and $4,000 against the other defendant, and the court rejected the apportionment as surplusage and entered judgment for $10,000 against both defendants, the effect was to enter judgment against appellant for a larger amount than authorized by the verdict, and will be set aside by this court. BIRD, J., dissenting.

3. CARRIERS—INSTRUCTIONS—DEGREE OF CARE.

    In an action for personal injuries by a passenger against a street railway company, an instruction by the trial court that plaintiff "was entitled to such transportation to Port Huron, and to the use of the highest possible known care by the carrier," followed later by the words, "the same character or degree of the highest possible degree of care is due to him," is erroneous as requiring a higher degree of care than the law requires.

4. APPEAL AND ERROR—INSTRUCTIONS—PRESUMPTIONS—HARMLESS ERROR.

    Where variant intructions are given to the jury, some of which are proper and some improper, it must be presumed that the jury followed the erroneous instruction.

5. WITNESSES—EVIDENCE—ADVERSE WITNESS—STATUTES—INSTRUCTIONS—APPEAL AND ERROR.

    Where plaintiff called the officers of defendant railway as witnesses to prove that defendant was operating the interurban line on which defendant's car was running at the time of the accident, under Act No. 307, Pub. Acts 1909, permitting the calling of hostile witnesses for cross-examination, it was error for the court to refuse to instruct the

jury, as requested by defendant, that plaintiff was bound by the testimony of such witnesses unless controverted. *Jones* v. *Railroad Co.*, 168 Mich. 1.

6. SAME—APPEAL AND ERRROR.

And the fact that the issue raised by the question was not raised on appeal does not render the refusal of the court to properly instruct the jury error without prejudice, where plaintiff's counsel, in his argument to the jury, attacked the veracity of such witnesses although he had offered no evidence to contradict them. BIRD, J., dissenting.

7. DAMAGES—EXCESSIVE VERDICT—NEW TRIAL.

In an action for personal injuries by a passenger against a street railway company, where the evidence showed that plaintiff was in his 77th year, and had an expectancy of about 5½ years, that he was receiving an annual salary of $900, with the privilege of earning what he could outside, that the injuries consisted of a comminuted fracture of both bones of the right leg below the knee and the fracture of two ribs, that he made a good recovery, and at the time of the trial he was active and earning to some extent, the award of $6,000 damages by the jury was excessive, and defendant's motion for a new trial should have been granted.[1] BIRD, J., dissenting.

Error to Wayne; Codd, J. Submitted January 27, 1914. (Docket No. 31.) Decided September 28, 1915.

Case by William Rathbone against the Detroit United Railway and another for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*William G. Fitzpatrick* and *Corliss, Leete & Joslyn,* for appellant.

*James H. Pound,* for appellee.

BIRD, J. (*dissenting*). While plaintiff was a passenger on one of defendant's interurban cars operating

---

[1] For excessive verdicts in suits for damages for personal injuries see note in 14 L. R. A. 677.

between Detroit and Port Huron, it collided with a good roads construction train, at a highway crossing near Marysville, and in consequence thereof he was seriously injured. When the collision occurred, the car was behind its schedule time, and was going at a high rate of speed. After discovering the good roads construction train at the crossing, little or no effort was made by the motorman to stop the car or to slacken its speed. The trial resulted in a verdict for the plaintiff. Defendant railway, which alone has appealed, insists that several reversible errors occurred in the trial court.

1. The verdict as rendered by the jury was:

"Verdict for plaintiff, $10,000—against the Detroit United Railway, $6,000; against Good Roads Construction Company, $4,000."

Later a judgment was rendered thereon. After the formal parts of the judgment, it recited that:

"They assess the plaintiff's damages on occasion of the premises, over and above his costs and charges by him about his suit in this behalf expended, at the sum of $10,000, and they apportion said amount of $10,000 as follows: $6,000 against the Detroit United Railway, and $4,000 against the defendant the Good Roads Construction Company."

The point is made against the verdict that it is "indefinite, uncertain, and incomplete," and it is insisted that no valid judgment could be rendered thereon.

By this verdict the jury have determined that plaintiff was entitled to damages, and have assessed them at $10,000. They have also found both defendants guilty. This is as far as they had a right to go. But they did go farther, and apportion the judgment between the defendants. In this they exceeded their authority. After they found the amount of the damages and both defendants guilty, the law steps in and applies the rule of liability, and consequently their ap-

portionment was without force. If we accept their conclusions while acting within their province, and reject them while acting outside of their authority, we have left a good verdict. There is no sound reason in declaring invalid what they have lawfully done, simply because they attempted to do something which the law would not permit, and especially is this so since what they properly did in no wise depends on what they improperly attempted to do. We must assume that both defendants were found guilty, and plaintiff's damages fixed without regard to the relative guilt of the defendants. The rule generally applied in such cases is stated as follows:

"Verdicts are to have reasonable intendment, and surplusage or immaterial findings may be rejected in construing them. Thus, if the verdict finds the issue and something more, the latter part of the finding will be rejected as surplusage, and judgment rendered in-dependently of the unnecessary matter; there being nothing to show that the jury reasoned falsely." 38 Cyc. p. 1890.

This rule is recognized and followed in *Burkle* v. *Circuit Judge,* 42 Mich. 513 (4 N. W. 192), and in *Rawson* v. *McElvaine,* 49 Mich. 194 (13 N. W. 513). Both of these cases are applicable, since the jury in each found not only a proper verdict, but something in addition. The additions were disregarded as surplusage, and the judgments were approved.

Much reliance is placed upon the following cases as being opposed to the validity of the judgment under consideration: *Everroad* v. *Gabbert,* 83 Ind. 489; *Crawford* v. *Morris,* 5 Grat. (Va.) 90; *Foy* v. *Barry,* 159 App. Div. 749 (144 N. Y. Supp. 971). These cases are not in point. An examination of them will disclose that in each of them a several verdict only was returned on a joint count. That fact furnished the reason for declaring the verdicts invalid. In the case at bar a joint verdict was first found, and this was fol-

lowed by a several verdict. The declaration counted upon a joint tort. The joint verdict for $10,000 was responsive to this count, and the balance of the verdict was immaterial, and should be adjudged surplusage under the Michigan cases.

2. An issue which received much attention in the trial court was whether the defendant railway was operating the interurban line. To prove that it was, plaintiff called the president, general manager, and treasurer of the Detroit United Railway for cross-examination under the statute (Act No. 307, Pub. Acts 1909). At the conclusion of the charge the attention of the court was called to the following matter:

"*Mr. Fitzpatrick:* Only one matter that you did not say anything about, and that is under the statute which permits parties to call adverse parties as witnesses. They go bound by the testimony of such witnesses unless the testimony is controverted by the other testimony. They make them their witnesses under the statute for every purpose that their testimony is uncontradicted in evidence.

"*The Court:* I do not understand it that way.

"*Mr. Pound:* That is not the law at all.

"*The Court:* I will not give that. I do not think that is the purpose of the statute."

The testimony elicited from these witnesses by plaintiff's cross-examination stood in no different position in the case than it would had defendant itself put the witnesses on the stand. What they testified to in either event would be testimony which might have been controverted by plaintiff, and in either event would be testimony for the consideration of the jury. The obvious purpose of this statute is to give to the parties the same benefit of each other's testimony as though they had become witnesses in their own behalf. For a construction of this act see *Jones* v. *Railroad Co.*, 168 Mich. 1 (133 N. W. 993). While we think the trial court was in error upon this question, we are not per-

suaded that under the statement of counsel for defendant railway the case should be reversed for this reason. The testimony of these witnesses was directed solely to the issue whether defendant the Detroit United Railway was operating the interurban railway. Defendant's counsel says in his brief:

"One of the important questions in the court below, though not raised here, was whether the Detroit United Railway was a proper party defendant."

We must assume from this statement that the defendant is content with the finding of the jury upon that question, and if such is the case, any errors that might have been made in reaching that conclusion are not now very important. We think the same thing can be said concerning the complaint which is made of the improper argument of plaintiff's counsel to the jury. This argument was all directed to the question as to whether the Detroit United Railway was operating the interurban line at the time of the accident.

3. Defendant complains because its tenth request was refused. It follows:

"The business of the country demands of these railways rapid transit, both for persons and property. And it cannot be said that the speed of even 60 miles an hour is negligence when running through the country outside of villages and cities, or through sparsely settled community."

Counsel states that this request is taken almost verbatim from the case of *Robinson* v. *Railroad Co.*, 79 Mich. 323, 328 (44 N. W. 779, 19 Am. St. Rep. 174), wherein it was said:

"It is well known that trains are now being run in many parts of the country at the rate of 50 to 60 miles per hour."

The trial court did not give the request in the language suggested, but did instruct them that:

"Now, in that connection I will say to you that the question of the defendant the carrier's liability is to be determined by the rules that govern the operation of steam railways in the open country, rather than by rules governing the operation of cars in cities and villages or thickly populated communities. What might be negligence in one place may not be negligence in another. *  *  *

"The railroad had a right to operate its cars at a high rate of speed, and the rate of speed alone is not evidence of negligence, but must be considered under all of the circumstances at the time. *  *  * So in the operation of this car over a certain stretch of track, which is clear, or is their own right of way, the speed of a certain number of miles an hour will not be negligence, whereas that same speed under different circumstances and under different surroundings might be the greatest kind of negligence."

The foregoing instructions fairly covered the request, save as to the precise speed the car was entitled to go in the country. The rate of speed at which it was proper for the car to go at some other place, where the conditions were favorable, was of no particular importance in this case. The rate of speed at which it was entitled to go at the place in question where there were curves and foliage to obscure the highway from the view of the motorman was a question for the jury.

4. Exception is taken to the rule laid down by the trial court defining the care defendant was chargeable with as a common carrier of passengers. The court instructed the jury that the plaintiff, while being transported,

"was entitled to such transportation to Port Huron, and to the use of the highest possible known care by the carrier in bringing him to Port Huron in safety. And there is no distinction in the care due from the common carrier of a passenger for hire as between a passenger upon a limited car or a passenger upon any other car. The same character or degree of the highest possible care is due to him."

Counsel's criticism of this instruction is that it makes an insurer of the carrier. It may be that this language, standing alone, is open to that criticism, but, when considered in connection with other portions of the charge which limit and explain it, the criticism loses its force. In the course of his charge the trial court instructed the jury that:

"The defendant carrier is not an insurer of the safety of its passengers, and it can only be adjudged liable for injuries caused by its negligence."

Later, in referring to the duty which might be expected of the defendant in the operation of its car, the court said:

"That the railroad company would regulate the speed of its cars so that it would be consistent with the degree of care and prudence required by good railroad management or by the laws which I have laid down."

The jury were also instructed that:

"The railroad had a right to operate its cars at a high rate of speed, and the rate of speed alone is not evidence of negligence, but must be considered under all the circumstances at the time. Interurban cars are not limited in the rate of speed that they may run across highways, provided proper care is taken in approaching them."

We do not think it is fair to assume that the jury got the impression that defendant was an insurer of the safety of its passengers, when the court instructed them in direct language that the defendant was not such insurer, and when the instruction complained of is followed by other instructions which explain in detail what its duty was as applied to the facts in the case. When the court instructed the jury that plaintiff was entitled "to the highest possible known care," had he added "consistent with the degree of care and

187 Mich.—38.

prudence required by good railroad management," the duty stated would not have been objectionable. *Michigan Central R. Co.* v. *Coleman,* 28 Mich. 440; *Marshall* v. *Railroad Co.,* 184 Mich. 593 (151 N. W. 696).

What the trial court did afterwards instruct the jury was, in my opinion, equivalent to so stating it at the time. This is in accord with the reasoning in *Marshall* v. *Railroad Co., supra.*

Finding no errors which call for a reversal of the case, the judgment of the trial court should be affirmed.

BROOKE, C. J. In this case the verdict rendered by the jury was:

"Verdict for plaintiff, $10,000—against the Detroit United Railway, $6,000; against Good Roads Construction Company, $4,000."

The verdict as rendered was entered in the short book. Later it was re-entered in the journal in the following language:

"They assess the plaintiff's damages on occasion of the premises, over and above his costs and charges by him about his suit in this behalf expended, at the sum of $10,000; and they apportion said amount of $10,000 as follows: $6,000 against the defendant Detroit United Railway and $4,000 against the defendant the Good Roads Construction Company."

A judgment was entered upon this verdict in the following terms:

"The jury by whom the issue joined in this cause was tried having rendered a verdict therein in favor of the plaintiff and against the defendants, and having assessed the damage of the said plaintiff against the said defendants on occasion of the premises at the sum of $10,000, over and above his costs and charges by him about his suits in that behalf expended to be taxed, and more than five days in term time having elapsed, therefore it is considered that the said plaintiff, William Rathbone, do recover against the said defendants his damages by jurors aforesaid assessed, amounting

to the sum of $10,000, together with his costs and charges aforesaid to be taxed."

My Brother BIRD is of opinion that the verdict is a good one, and that the judgment against both defendants in the sum of $10,000 was properly entered. He treats the attempted apportionment of the damages between the two defendants as mere surplusage, and says:

"There is no sound reason in declaring invalid what they have lawfully done, simply because they attempted to do something which the law would not permit, and especially is this so since what they properly did in no wise depends on what they improperly attempted to do. We must assume that both defendants were found guilty, and plaintiff's damages fixed without regard to the relative guilt of the defendants."

I am entirely unable to agree with my Brother BIRD when he says that what the jury properly did in no wise depended upon what they improperly attempted to do, nor with his last assumption that the plaintiff's damages were fixed without regard to the relative guilt of the defendants. I am of opinion that both statements are conclusively negatived by the language of the verdict itself as rendered. The judgment entered upon the verdict fixes upon the appealing defendant a liability for $10,000. The jury by the express terms of their verdict limited that liability to $6,000. Had they supposed that by the verdict they rendered a further liability to the extent of $4,000 would be placed upon the appealing defendant, it cannot be supposed that the verdict would have taken the form that it did. They were careful to limit the extent of the liability of each defendant. The assumption that the plaintiff's damages were fixed without regard to the relative guilt of the defendants is just as certainly refuted by the language of the verdict itself. The jury determined the relative guilt, and punished

each defendant in accordance with their view of the comparative negligence of which each defendant was guilty.

The general statement from Cyc., quoted by my Brother BIRD, that mere surplusage may be disregarded, cannot be questioned.

A further quotation from the same compilation holds:

"If the suit is against joint tort-feasors, the assessment of damages must be for a lump sum against those found guilty, and cannot, in the absence of statute, be severally apportioned between them." 13 Cyc. p. 250, and cases cited in note 92.

The cases cited by my Brother BIRD from Michigan have no bearing upon the question. The first, *Burkle* v. *Circuit Judge*, 42 Mich. 513 (4 N. W. 192), was a statutory proceeding in ejectment, and it was held that the fixing by the jury of the value of the land and the value of the improvements were mere surplusage under the statute, after the plaintiff, a life tenant, had recovered a verdict for possession of the land. The other case, *Rawson* v. *McElvaine*, 49 Mich. 194 (13 N. W. 513), was a case in assumpsit for the value of a bonnet sold to the wife of the defendant, but remaining in possession of the plaintiff. The verdict was in favor of the plaintiff for the value, "and that the plaintiff deliver to the defendant the bonnet." This court held that the quoted language was surplusage and merely a statement of what would legally follow from the verdict. Neither case is authority for the action taken in the case at bar.

The case of *Everroad* v. *Gabbert*, 83 Ind. 489, is much like the case at bar. There, in an action for conversion, the verdict was as follows:

"We, the jury, find for the plaintiff, and assess his damages at nine hundred and eighty and 47/100 dollars, as against John Cook and William F. Everroad,

and, also, against Samuel C. Daugherty and William F. Everroad the sum of six hundred and seventy and 95/100 dollars."

The defendants moved the court for a *venire de novo* because of the defectiveness of the verdict. They then separately moved the court for a new trial. Their motions were overruled, and final judgment rendered against the appellants Cook and Everroad for the sum found by the jury against them, and against Daugherty and Everroad for the sum found by the jury against them. The court said:

"The words, 'We, the jury, find for the plaintiff,' are equivalent to a finding that the appellee was the owner, and entitled to the immediate possession, of the property described in the complaint, and that the appellants had, as therein charged, wrongfully and unlawfully converted the same to their own use. There is but one finding for the appellee, and but one conversion found. The finding is against all the appellants, and finds them all jointly guilty. It is not, nor can it be construed to be, a finding of two conversions, one by Cook and Everroad of a part of the property, the other by Daugherty and Everroad of another part. After this general finding for the appellee and against the appellants, the jury assess the damages as follows: 'And assess his damages at $980.47, as against John Cook and William F. Everroad, and, also, against Samual C. Daugherty and William F. Everroad the sum of $670.95.'

"These separate assessments of damages were made on account of the joint guilt of all the appellants as previously found by the jury, not for or on account of separate and distinct conversions, in which two only of the appellants were concerned.

"The question raised by the motion for a *venire de novo* is, where the jury has found that all the defendants are guilty jointly of a wrongful and unlawful conversion of property, can they assess several damages? We think they cannot."

In *Crawford* v. *Morris*, 5 Grat. (Va.) 90, it is held that in a joint action of trespass against several, if the

jury found them guilty, they should assess the damages jointly against all. It is further held in that case that, if by mistake the jury assess several damages, the plaintiff may cure the defect by entering a *nolle prosequi* against several and taking judgment against one.

In the case of *Foy* v. *Barry*, 159 App. Div. 749 (144 N. Y. Supp. 971), the action was in tort. A verdict was rendered in favor of the plaintiff against Soper for $250, and against Barry for $1,000. Upon the verdict thus rendered judgment was entered against Soper for $697.85, and against Barry for $1,447.85, being the amount of the verdict, plus a full bill of costs in each instance. Soper paid the amount of the judgment against him, and Barry thereupon moved to have his judgment satisfied of record. The court said:

"The jury, therefore, could not legally apportion, as between Barry and Soper, the amount which each should pay. The verdict should have been for such an amount as would compensate the plaintiff for the wrong inflicted by both defendants, upon which judgment could then have been entered against both. The verdict here rendered was improper in form, and the jury should have been so told and sent back with proper instructions for one amount against both defendants. Plaintiff, however, was satisfied with the form of the verdict, and entered a judgment against each defendant, as above stated, and is not now in a position to complain that the satisfaction of one judgment has satisfied the other."

A number of cases are cited in support of this case.

It will be noted that the judgment followed the verdict in this case; whereas the judgment in the case at bar does not even purport to follow the verdict. See, also, *Lynch* v. *City of Chicago*, 152 Ill. App. 160.

Had plaintiff chosen to have the judgment entered in accordance with the terms of the verdict rendered (and the entry of any other judgment was wholly un-

warranted), a different question would be presented, and under the authorities cited it might be held that the appellant had no cause of complaint, because in any event the jury had found it guilty and assessed the damages against it at the sum of $6,000. That, however, was not done, and we are now dealing with a judgment against the appellant for $10,000, when the verdict of the jury as to it was that it should be condemned in the sum of $6,000. It seems to me that common sense, as well as law, forbids such a result.

In defining the duty of the defendant railroad company to the plaintiff the learned trial judge said that plaintiff "was entitled to such transportation to Port Huron, and to the use of the highest possible known care by the carrier." Again he said: "The same character or degree of the highest possible degree of care is due to him." This is a direct, simple, and positive statement of the law. My Brother BIRD is of the opinion that some of the qualifying language later contained in the charge served to cure the vice of this erroneous instruction. With this view I am unable to agree. We have frequently held that, where variant instructions are given to the jury, some of which are proper, and some of which are improper, it must be presumed that the jury followed the erroneous instruction. That the instruction of which complaint is made is erroneous is clear. In the early case of *Michigan Central R. Co.* v. *Coleman*, 28 Mich. 440, this court said, in construing an instruction practically the same as the one in the case at bar:

"The language used would fairly permit the jury to find anything to be negligence which could by any possibility be avoided. But negligence is neither more nor less than a failure of duty. All railroad companies are held to the duty of being prudent railroad companies, and bound to conduct their business with such precautions as prudence has usually found necessary. As compared with the care needed in business

involving no possible human risk, the care to be used may be properly enough called extraordinary, but, as compared with each other, all such companies have the same duty. * * * Any instructions which leave out of sight the fact that railroads must be conformed to system, and cannot be likened to those means of transit in which the business of a single vehicle cannot endanger any other, or which compels a departure from the common rules of good railroad management, is directly calculated to mislead."

Again, in *Grand Rapids, etc., R. Co.* v. *Huntley,* 38 Mich. 537 (31 Am. Rep. 321), it is said:

"These [railroads] are liable only when there has been actual negligence of themselves or their servants. If they exercise their functions in the same way with prudent railway companies generally, and furnish their road and run it in the customary manner which is generally found and believed to be safe and prudent, they do all that is incumbent upon them."

In *Beattie* v. *Railway,* 158 Mich. 243 (122 N. W. 557), we said:

"The degree of care required to be exercised by carriers of passengers upon steam railways in securing the safety of passengers entering or alighting is 'the highest care, or the care which a very prudent person would have used under the circumstances.' This rule is also applicable to street cars."

The vice of the instruction lies in the use of the words "highest possible known" and "highest possible," and in connection therewith failing to make the application of the rule announced dependent upon the circumstances surrounding the case. It must be clear to the dullest mind that it is possible for a common carrier to so run its trains as to absolutely prevent accident or injury to its passengers. That such a course is "known" is equally clear. But no one would contend that common carriers were bound to exercise such a degree of care. To hold them liable for a failure to exercise such care would, in effect, be to destroy their

usefulness.   The rule as laid down in Michigan is supported by the weight of authority in other States.   5 Am. & Eng. Enc. Law (2d Ed.), p. 558, note 6, p. 559, note 1.

The failure of the court to properly instruct the jury as to the testimony elicited from the officers of defendant called under the statute in accordance with our holding in *Jones* v. *Railroad Co.*, 168 Mich. 1 (133 N. W. 993), is held by my Brother to be error without prejudice, because the question upon which such testimony was elicited was not raised in this court.   Under ordinary circumstances this might be true.   The point of the exception, however, is directed to the fact that the instruction should have been given in the court below, where the question was in issue, because of the attack made by plaintiff's counsel upon the officers of the defendant, whose testimony he had secured under the statute.   He said:

"I would not believe one of them anyway, from the top to the bottom.   There is no disputing the fraud of the Detroit United Railway; that is not disputed. I would not believe one of them, as I say, from the top to the bottom."

In view of the fact that plaintiff offered no evidence tending to contradict that elicited from these officers, I think the language of counsel was unwarranted and prejudicial.   By giving the proper instruction the court, to some extent at least, could have cured the error.

A motion for a new trial was made based upon various grounds, one of which was that the verdict was excessive.   The plaintiff was in his seventy-seventh year at the time of the accident, and had an expectancy of about 5½ years.   He was receiving an annual salary of $900, with the privilege of earning what he could outside.   The testimony as to his outside earnings is indefinite and unsatisfactory.   The injuries consisted

of a comminuted fracture of both bones of the right leg below the knee, and the fracture of two ribs. He made a very good recovery, and at the time of the trial, when in his seventy-ninth year, was active and earning to some extent. Under these circumstances, I am of opinion that the award, under all the authorities in this State, was excessive. If this were the only error, it might be cured in this court by the entry of an order granting the defendant a new trial, unless plaintiff remitted a portion of the verdict. But, because of the other errors pointed out, the judgment should be reversed, and a new trial granted.

STONE, OSTRANDER. and STEERE, JJ., concurred with BROOKE, C. J.

MOORE, J.   I think the charge as to the degree of care required was harmful error, and for that reason think the case should be reversed.

KUHN, J., did not sit.

The late Justice MCALVAY took no part in this decision.