PURE GAS AND CHEMICAL COMPANY,
Appellant (Defendant below),

Leonard Timmermeyer, d/b/a Timmermeyer
Oil Company, and Clover Sturlin,
(Defendants below),

v.

Thelma Jean COOK, Appellee
(Plaintiff below).

No. 4312.

Supreme Court of Wyoming.

Oct. 2, 1974.

R. R. Bostwick, Murane, Bostwick, McDaniel & Scott, Casper, for appellant.

Robert B. Ranck, Ranck & Bommer, Jackson, Murphy, Robinson, Heckathorn & Phillips, Kalispell, Mont., for appellee.

Before PARKER, C. J., and McEWAN, GUTHRIE, McINTYRE and McCLINTOCK, JJ.

Mr. Justice GUTHRIE delivered the opinion of the court.

This is an appeal by Pure Gas and Chemical Company from a joint and several judgment in the sum of $60,000 for injuries suffered by plaintiff in an explosion and entered against it and Clover Sturlin, who does not appeal.

Plaintiff and her then husband leased an apartment in Jackson from Sturlin and began occupancy of these premises on or about November 1, 1965. At the time they moved into these premises they contained a water heater, space heater, and cooking stove, which were supplied propane gas from two upright bottles. Because these bottles did not hold a sufficient supply, plaintiff's husband made arrangements with defendant Pure Gas for the installation of a larger tank which was installed and connected to the fixtures, bringing the gas from the larger tank into these appliances. This was done November 22, 1965. At the

time of lighting the pilot lights plaintiff inquired of the workman if the odor of gas would go away and was assured it would disappear in a short while. However, this odor persisted until the time of the explosion, although it was at times not noticeable to one who had remained in the apartment but again would be noticed when one re-entered the apartment. There is a conflict in the evidence but it may be concluded that complaint and notice of this condition was made to both defendants. On the day of this explosion Mrs. Anderson, who visited the premises about 11 o'clock, noticed the strong odor of gas. Later that afternoon—probably just a few minutes before 4 o'clock—as plaintiff was preparing to leave with her little girl and was near the front door the floor lifted up, a patch of light went across the room, the window was broken, and she heard a loud sound. She remembers very little but a short time later heard the child crying and found there were boards lying on her. She was taken to the hospital and treated for injuries.

At the time of the explosion Leonard Timmermeyer was filling a gasoline tank from his truck which supplied a pump on the Sturlin premises. This tank and the pipe used to fill it were located under or near the front proch of the Sturlin apartment. Timmermeyer immediately withdrew the hose from a filler pipe, rolled it up, and moved the truck a short distance. He then returned to help get plaintiff out of the wreckage. There was little fire damage associated with this explosion.

The principal question which the jury had to resolve in this case was the cause of the explosion and from which source came the explosive fumes.

## VERDICT OF THE JURY AND JUDGMENT

The jury returned a verdict in the following form:

"We, the jury, duly impaneled and sworn to try the issues in this cause render our verdict as follows:

"(1) We find in favor of the plaintiff, Thelma Jean Aakre, and against the following named defendant(s):

"Pure Gas and Chemical Company 60,000.00

"~~Leonard Timmermeyer, doing business as Timmermeyer Oil Co.~~

"Clover Sturlin: 5,000.00

"and we assess plaintiffs damages in the sum of "$65,000.00 .

"(2) We find against the plaintiff, Thelma Jean Aakre, and in favor of the following named defendant(s):

"~~Pure Gas and Chemical Company~~

"Leonard Timmermeyer, doing business as Timmermeyer Oil Co.

"~~Clover Sturlin:~~

"(Signed) Joseph L. May
(Foreman)          (Forewoman)"

Appellant asserts that the court erred in receiving this verdict and in its failure to resubmit this verdict to the jury for correction, relying upon § 1–132, W.S. 1957, asserting this statute makes such action mandatory upon the court. This contention merits little discussion hereunder because of the announced rule appearing in DeWitty v. Decker, Wyo., 383 P.2d 734, 739–740. True, counsel for appellant was not present when this verdict was returned but he had absented himself through choice because of his individual convenience and necessity and was not then present to assert these objections, which can be waived. The court as a matter of courtesy had allowed him to be excused. This verdict was a matter of discussion between the court and the attorneys for parties who had remained in the trial, and those parties stipulated that the verdict might be received and the jury was polled. The following statement from DeWitty is most apropos:

"* * * we do not think it harsh or unreasonable to require a litigant, when an opportunity is afforded during the trial, timely to bring a matter such as here to the attention of the trial court in

order that it might be corrected, and failing in this that he shall not be heard here to complain. To hold otherwise would seem unfair to the jury, to the trial court, and to the other litigants, to say nothing of the unnecessary loss of time and expense."

This case, having taken five and one-half days' time of the jury, the judge, and counsel, and involving witnesses from distant points, should not be aborted by the counsel's willing absence and the failure of any person upon the part of the appellant to seek correction at the proper time and before discharge of the jury.

Appellant's contention is that the verdict is contrary to law because it attempted an apportionment of the damages. In similar situations there are four approaches which courts have taken, only two of which apply here, 89 C.J.S. Trial § 508, p. 183. These are that the verdict should be set aside or that it may be cured by disregard of the apportionment as surplusage and entry of judgment against all defendants by adding together the items for a total judgment. Appellant asserts that the first rule is applicable because of § 1–132. In light of our view of the operation of this section we cannot agree with this contention.

■■ We have been unable to find any authority from this jurisdiction which is of assistance, although this court has mentioned that there is no right of indemnity as between joint tortfeasors.[1] The release of one joint tortfeasor operates as a discharge of both,[2] and some inference may rest in these holdings, i. e., the right to recover for tortious injury is an indivisible single claim which defies apportionment. That a jury cannot properly apportion damages between joint tortfeasors has almost universal recognition.[3] Miller v. Singer, 131 Colo. 112, 279 P.2d 846, 848,

contains an exhaustive citation. The annotation appearing in 46 A.L.R.3d 808 et seq., indicates approval of this rule by 43 listed jurisdictions. Thus this verdict was improper for the jury to return. Although the question has never arisen in this state, it is not unique and has often been considered in various states when juries have returned verdicts attempting to apportion damages in face of this rule.

There are numerous cases treating the question of what effect a jury's effort to apportion the damages has, as was done here. Although some courts have held that such a verdict is defective and should be set aside and cannot sustain a joint judgment, there is considerable authority otherwise. To sustain this position appellant herein has cited us to the cases of Rathbone v. Detroit United Ry., 187 Mich. 586, 154 N.W. 143; City of Birmingham v. Hawkins, 196 Ala. 127, 72 So. 25, and Glore v. Akin, 131 Ga. 481, 62 S.E. 580, along with 52 Am.Jur. Torts, § 124, p. 459. There is abundant authority contrary to this, but some of appellant's authorities will be examined.

We note with interest that the Am.Jur. citation relied upon, after giving recognition to this rule, states at p. 460:

"The numerical weight of authority, however, is to the contrary, and the trial court is held entitled to treat all the matter after the finding of joint liability as surplusage. * * *"

Although we have heretofore suggested that mere weight of decision from other states must not be accepted without careful examination, it should never properly be ignored, Collins v. Memorial Hospital of Sheridan County, Wyo., 521 P.2d 1339, 1341.

An examination of Rathbone, supra, is most interesting.[4] First we find a strong

1. Convoy Company v. Dana, Wyo., 359 P.2d 885, 887; Miller v. New York Oil Co., 34 Wyo. 272, 243 P. 118, 121.

2. Natrona Power Co. v. Clark, 31 Wyo. 284, 225 P. 586, 587.

3. This is in absence of statute. The writer intends no comment but observes that this

case was tried prior to the enactment of Ch. 67, S.L. of Wyoming 1973, being §§ 1–7.3 to 1–7.6, W.S.1957, 1973 Cum.Supp.

4. The court of appeals in Detroit City Gas Co. v. Syme, 6 Cir., 109 F.2d 366, 369, although bound to follow the Michigan law, notes contrary authority in other jurisdic-

dissent therein, but of most importance is the discussion of the court appearing in 154 N.W. at 145, suggesting that if the trial court had entered judgment upon this verdict for the amount only of $6,000 which had been assessed against appellant utility by the jury, rather than $10,000 which resulted from adding the two figures of $6,000 and $4,000, which was found against another defendant, that the result might have been different, and in discussing it that court said:

"* * * it might be held that the appellant had no cause of complaint, because in any event the jury had found it guilty and assessed the damages against it at the sum of $6,000. * * *"

This statement appearing in that case clearly removes it as authority in the instant case because the trial judge reduced this judgment to $60,000, the amount determined to be due from the appellant by this jury, and reduced it in the amount of $5,000 found against Sturlin, and thus by way of the statement appearing in the Rathbone case the propriety of this court's action is confirmed.

There is much authority that where a jury has made a general finding of damages in a specific amount with an attempt by the jurors to apportion the damages the verdict may be taken and the apportionment treated as surplusage or as an irregularity. The case of Patton v. Guyer, 10 Cir., 443 F.2d 79, 87, notes that this is the Kansas rule and the rule in most jurisdictions. Also see Schuman v. Chatman, 184 Okl. 224, 86 P.2d 615, 617; Morgan v. Gore, 96 Colo. 508, 44 P.2d 918, 919–920;

Bakken v. Lewis, 223 Minn. 329, 26 N.W. 2d 478, 482, and Atherton v. Crandlemire, 140 Me. 28, 33 A.2d 303, 305. The latter case classifies such effort as a recommendation, to be treated as surplusage. It is our view that it would be most unfair to the plaintiff herein to hold this verdict void. Particularly does this appear true when it might have been avoided by proper objection of counsel prior to the discharge of the jury. It is at times too easy to view fairness as only affecting the one who appeals without proper consideration of the appellee's position.[5] Thus the trial court did not err in entry of the judgment in the sum of $60,000 and no question is posed as to the propriety of the reduction of the general verdict.

### INSTRUCTIONS

■ Appellant suggests error in the giving of Instruction 11 and because of the failure of the trial court to give offered Instructions A, B, and C. We shall first consider the objection to Instruction 11, which covers unavoidable accident, and the objection to which is only as to the last paragraph. It may be noted that the plaintiff objected strenuously to this instruction. We examined the objection of appellant and find the following:

"* * * as being superfluous and not adding anything to the statement of the law and tends toward confusion in the understanding of the instruction."

This objection is not one "stating distinctly the matter to which he objects and the grounds of his objection," Rule 51, W.R. C.P., and does not indicate "with definite-

---

tions. An examination of Coburn v. Goldberg, 326 Mich. 280, 40 N.W.2d 150, indicates the Michigan court does not slavishly follow this rule.

5. We do not confront the question whether the defendant can be heard to complain when the jury returns an improper verdict against two or more defendants as done in this case. Prosser, Law of Torts, Ch. 8, § 47, p. 299 (4th Ed.), under these conditions suggests: "* * * A defendant, however, usually is not permitted to complain at all, as

he might have been sued severally, and the smaller verdict against another defendant does not relieve him of his own liability, as determined by the jury."
1 Harper and James, The Law of Torts, § 10.1, p. 702 (1956), suggests that the plaintiff's recovery should not be dependent "on his ability to apportion the damage but that this is a problem which is properly left with the defendants themselves."

ness and particularity the error asserted," Texas Gulf Sulphur Company v. Robles, Wyo., 511 P.2d 963, 968, and authorities cited; and in the absence of cited authorities or cogent argument we will not consider the same, Joly v. Safeway Stores, Inc., Wyo., 502 P.2d 362, 365.

It is to be noted in connection with this discussion that there was no other objection to these instructions asserted by appellant and absent such objections they became the law of the case, Joly v. Safeway Stores, Inc., supra, and cited authorities.

For the purposes of this discussion we shall join the instructions designated as A and C. These contain, as appellant styles them, classic definitions of "negligence" and "proximate cause." An examination reveals that the court defined "negligence" in Instruction 7. It is our view that to have reiterated the definition in the terms of the instruction offered by appellant would have confused the jury, and that if appellant deemed this instruction improper, objection should have been made thereto and an effort made to tailor a proper definition. It is also to be noted that the definition of "negligence" as appears in this instruction is substantially the same as the definition of "negligence" appearing in Wyoming Pattern Jury Instructions, No. 2.02.

Offered Instruction C is another so-called classic instruction defining "proximate cause." However, an examination of Instruction 8 as given defines "cause" in substantially the language of 2.07 of Wyoming Pattern Jury Instructions, omitting the word "proximate" before "cause." However, no objection was made to Instruction 8 nor was it pointed out to the court that the word "proximate" was omitted. These instructions standing side by side would have been indeed most confusing and misleading.

With reference to offered Instruction B which would have defined the term "ordinary care," although we do not deny the propriety of giving such instruction we do not find it to be prejudicial error, particularly when we read from Instruction 7 the definition of "negligence" in the following words:

" * * * or the doing of something which an ordinarily careful person would not do, under circumstances the same or similar to those shown by the evidence. It is an absence of ordinary care."

We do not believe that the appellant in its brief or argument carries its burden of demonstrating that even if this were error it was prejudicial. The burden of discovery of prejudicial error cannot be transferred to the appellate court by mere mention of mistake.

Additionally, in the case of Devine v. Northwestern Elevated R. Co., 265 Ill. 641, 107 N.E. 118, 119, we find that court, answering a criticism of the failure to define certain words, including "due and ordinary care," made the following statement in its disposal:

" * * * The argument especially criticizes the using of the words 'due and proper care and caution' without defining what those words mean; counsel insisting that the jury might be misled as to their meaning unless further defined. With this we cannot agree. The words are not technical. They are in common use. To require the definition of all words or expressions used in instructions would often tend to confuse rather than aid the jury. If it is necessary to explain such terms, might it not be equally necessary to explain the terms used in the explanation? * * *"

We find this case cited with approval in Stivers v. Black & Co., 315 Ill.App. 38, 42 N.E.2d 349, 352, by repetition of this same quotation. We find it has been held the term "unreasonably dangerous" is not such term as requires definition or that the failure to so define was error, Metal Structures Corporation v. Plains Textiles, Inc., Tex.Civ.App., 470 S.W.2d 93, 102. The Supreme Court of Kansas has held that the court "is not required to define every

phrase used in an instruction unless from a fair reading of the instructions as a whole there is likelihood the jury will be misled or left to speculate without further explanation," and has further called attention to the fact that the pattern instructions of that state do not see fit to include a definition of "immediate hazard," McGlothlin v. Wiles, 207 Kan. 718, 487 P.2d 533, 539. This writer confesses that in his mind the term "immediate hazard" may be less understandable than the term "ordinary care." [6]

A party seeking reversal must establish that the error was prejudicial and that error is never presumed, Robertson v. State Highway Commission, Wyo., 450 P.2d 1003, 1005; Waters v. Trenckmann, Wyo., 503 P.2d 1187, 1192; Booth v. Hackney, Wyo., 516 P.2d 180, 183. The last two cited cases involved assignments of error in giving instructions, and we find none demonstrated here.

## DR. MARTIN'S TESTIMONY

Appellant asserts several objections to the reception of the testimony of Dr. Martin. In its brief it asserts:

"* * * perhaps most important item with respect to Dr. Martin's testimony is that the Court permitted Dr. Martin, over an objection, to give his opinion as to the ultimate cause in fact. * * *" [7]

We cannot reach this point because it was not asserted as a basis for ground of objection at that time, Rule 46, W.R.C.P.; Bates v. Donnafield, Wyo., 481 P.2d 347, 350; Joly v. Safeway Stores, Inc., Wyo., 502 P.2d 362, 364.

The portion of the objection which refers to remoteness raises only a question of the trial court's discretion. This court is well committed to the rule that remoteness goes to the weight of the evidence and that its admission rests in the trial court's discretion, State v. Koch, 64 Wyo. 175, 189 P.2d 162, 164; Lonquest v. State, Wyo., 495 P.2d 575, 583, certiorari denied, 409 U.S. 1006, 93 S.Ct. 432, 34 L. Ed.2d 299, and cases cited. [8]

The entire record demonstrates a complete similarity of condition could never have been available here. Even appellant's expert who examined the premises five to six days later was confronted with a situation where the premises had been partially cleaned up with some of the fixtures and furniture removed, including the cooking stove.

Appellant's further contention is that it was error to receive the testimony of Dr. Martin "that he used a probe into the ground and found the presence of propane in the area of the trench which took care of the water and sewer lines into the premises." This was in part a description of Martin's procedure in examining this scene and might be viewed as preliminary. This court has heretofore observed in discussing the testimony of an expert that "generally the scope and conduct of the examination is a matter of judicial discretion," In re Nelson's Estate, 72 Wyo. 444, 266 P.2d 238, 260. Also see Nelson v. Brames, 10 Cir., 241 F.2d 256, 257. But there is a more compelling reason this evidence should have been received. Although appellant contends it was not the condition at the time of the explosion, the experts agree that if spilled upon the ground this propane gas will move downward, which lends to a possible inference of a spill or leakage from the tank at some

---

6. It is the writer's personal view, at the risk of criticizing a legal conceit, that the average juror's definition of "ordinary care" could well be more realistic and applicable than the stilted phrases of an instruction.

7. The objection made at the trial was as follows:
   "We object to that, based on evidence that is remote, five months after the occasion complained of, and no showing that they are even similar."

8. II Wigmore on Evidence, § 437, p. 417 (3d Ed.), in discussing admissibility as affecting time and condition states:
   "The matter should be left entirely to the trial Court's discretion."

past time. In pursuit of this claimed error it is argued that there are other possibilities to explain the presence of this propane gas, but this in our view goes to the weight and not the admissibility of this evidence.

## SUFFICIENCY OF THE EVIDENCE

■ Appellant attacks the verdict on the basis there was not sufficient evidence to sustain it, particularly because there is no "valid source of igniting fuel." Admittedly, there was an explosion and there is no disagreement that it came from one of two sources, i. e., propane gas from the tank and installation made by defendant Pure Gas or the discharged vapor generated from the filling of a gasoline tank by Timmermeyer, a defendant for whom the jury found. Its argument is based largely upon an attack upon the testimony of Dr. Martin and reliance upon the testimony and theories of its expert Harrison. No good purpose will be served by discussion of this testimony other than to say it is sharply in conflict. However, the jury in this case, particularly as to the source of igniting fuel, was not forced to rely entirely upon the opinion of Dr. Martin. There is undisputed testimony of a noticeable odor of propane gas from November 22, the very time of the installation of this tank, until the time of the explosion, and testimony that it was "strong" earlier on that day. It is not improper to observe that defendant's expert said he did consider this fact significant. There is the further factual evidence—not opinion evidence —of Dr. Martin, although disputed, as to the improper installation on the regulator, resulting in cross threading with a leakage if the valve were turned on. From what has been said, it is our view that this contention is an invitation for this court to reweigh, reconsider, and review the actions of the jury. They having resolved this issue contrary to the appellant, we cannot accept this invitation, Neal v. Wailes, Wyo., 346 P.2d 132, 134; Berry v. Iowa Mid-West Land & Livestock Company, Wyo., 424 P.2d 409, 410.

## INTEREST ON THE JUDGMENT

■ The court in its judgment provided that it should draw interest from November 5, 1972, the date of the verdict, although the judgment was entered on July 18, 1973. Appellant challenges this and we must agree that interest can only be computed from the date of the judgment. This court long ago held that there was no common-law right to interest on a judgment and that it "is strictly statutory," Wyoming Central Irr. Co. v. LaPorte, 26 Wyo. 522, 188 P. 360, 362; Wyoming Nat. Bank of Laramie v. Brown, 7 Wyo. 494, 53 P. 291, 75 Am.St.Rep. 935, rehearing denied, 9 Wyo. 153, 61 P. 465. The same rule has been applied to verdicts, 47 C.J.S. Interest § 20, p. 32. There seems more compelling reason for application of this rule to the verdict because, as demonstrated in this case, it is not a final liquidation of the sum due, being reduced by $5,000 in the judgment. From the statutes cited to us, § 13–477, W.S.1957, 1973 Cum.Supp., and § 1–308.1, W.S.1957, 1973 Cum.Supp., it would appear that at the time the verdict was entered we had no statute specifically providing for interest on a judgment. The statute in effect at the time this judgment was entered (§ 1–308.1) provides for interest at the rate of ten percent "from the date of rendition" of the judgment. Thus it was improper to allow interest prior to the date thereof.

The judgment is therefore affirmed with the instruction that it be modified to provide for the payment of interest from and after July 18, 1973.

Affirmed as modified.