**Larry B. CERVELLI, Appellant (Plaintiff),**

v.

**Kenneth H. GRAVES and DeBernardi Brothers, Inc., Appellees (Defendants).**

**No. 5801.**

Supreme Court of Wyoming.

April 6, 1983.

---

Jack B. Speight (argued) and Blair J. Trautwein of Hathaway, Speight & Kunz, Cheyenne, signed the brief on behalf of appellant.

David D. Uchner (argued) and Mark A. Bishop of Lathrop & Uchner, Cheyenne, signed the brief on behalf of appellees.

Before ROONEY, C.J., and RAPER, THOMAS, ROSE and BROWN, JJ.

RAPER, Justice.

This case arose when Larry B. Cervelli (appellant) filed a personal injury suit for injuries he sustained when a pickup truck driven by him collided with a cement truck owned by DeBernardi Brothers, Inc. (appellee). The cement truck was driven by DeBernardi's employee, Kenneth H. Graves (appellee) while acting in the course of his employment. After trial, a jury found no negligence on the part of appellees. Appellant argues the jury was incorrectly instructed and, as a result, found as it did thereby prejudicing him. He raises the following issues on appeal:

"A. Did the court err in instructing the jury that it was not to consider a person's skills in determining whether that person is negligent?

"B. Did the court err in not instructing that defendant, Kenneth H. Graves, is held to a more specific standard of care since he was a professional truck driver and plaintiff, Larry B. Cervelli, was not?

"C. Did the court err in instructing the jury that there is no liability for injuries from dangers that are obvious and reasonably apparent in the context of this matter."

We will reverse and remand.

Around 7:30 a.m., February 22, 1980, a collision occurred approximately nine miles west of Rock Springs, Wyoming in the westbound lane of Interstate Highway 80 involving a pickup driven by appellant and appellee's cement truck. At the time of the accident, the road was icy and very slick; witnesses described it as covered with "black ice." Just prior to the accident appellant had difficulty controlling his vehicle and began to "fishtail" on the ice. He eventually lost control of his vehicle and started to slide. Appellee Graves, who had been approaching appellant from behind at a speed of 35–40 m.p.h., attempted to pass appellant's swerving vehicle first on the left side, then the right. He too, thereafter, lost control of his cement truck and the two vehicles collided. It was from that accident that appellant brought suit to recover damages for the numerous injuries he suffered.

By his own admission, appellee Graves at the time of the accident was an experienced, professional truck driver with over ten years of truck driving experience. He possessed a class "A" driver's license which entitled him to drive most types of vehicles including heavy trucks. He had attended the Wyoming Highway Patrol's defensive driver course and had kept up-to-date with various driving safety literature. He was the senior driver employed by appellee DeBernardi Brothers, Inc.

The suit was tried to a jury on the issues of appellee's negligence as well as the degree, if any, of appellant's own negligence. After a four-day trial, the jury was instructed and received the case for their consideration. They found no negligence on the part of appellees. Judgment was entered on the jury verdict and appellant moved for a new trial claiming the jury was improperly instructed. The district court took no action on the motion; it was deemed denied in sixty days. Rule 59, W.R. C.P. This appeal followed.

Appellant calls our attention to and alleges as error the district court's jury instructions 5 and 10. Instruction 5 instructed the jury that:

"Negligence is the lack of ordinary care. It is the failure of a person to do something a reasonable, careful person would do, or the act of a person in doing something a reasonable, careful person would not do, under circumstances the same or similar to those shown by the evidence. The law does not say how a reasonable, careful person would act under those circumstances, as that is for the Jury to decide.

"A reasonable, careful person, whose conduct is set up as a standard, is not the extraordinarily cautious person, nor the exceptionally skillful one, but rather a person of reasonable and ordinary prudence.

"Negligence is actionable only when it appears that it was a direct cause of any

injury and damages complained of. A direct cause is a cause which directly brings about the injury either immediately or through happenings which follow one after another.

"There may be more than one direct cause in that an accident may result from one or more separate and distinct acts by different persons."

Instruction 10 instructed the jury that: "Cervelli [appellant] and Graves [appellee] had a duty to use ordinary care for their own safety and protection, and to that end to observe the dangers, if any, which were open and obvious to them, or as well known to one as to the other, if they were using reasonable care and caution for their own safety and protection, and to guard against injury to themselves so far as by such reasonable care they could protect themselves. They had a duty to use for their own safety all such care and caution as an ordinarily prudent person ordinarily uses under like circumstances.

"Ordinary care demands that such vigilance be increased where special circumstances exist. The degree of diligence required of the parties in order to measure up to the standard of ordinary care which the law requires, varies with the circumstances and the conditions which might normally be brought about by the weather, and the opportunity to observe

things. There is no liability for injuries from dangers that are obvious, reasonably apparent, or as well known to the person injured as they are to any other parties."

■ In chambers, appellant's counsel made timely and specific objections to both instructions 5 and 10 and proposed instructions consistent with his objection to instruction 5.[1] Appellant's counsel stated distinctly that he objected to the second paragraph of instruction 5 because he argued appellee Graves was a professional truck driver and should be "held to a higher duty of care." In the alternative, counsel argued if appellee Graves is not held to a higher standard by virtue of his occupation, the jury is at least allowed to take cognizance of any knowledge and skill he possesses; therefore, the instruction's second paragraph should be deleted. Instruction 10, in its entirety, was objected to as incorrectly applying the doctrine of known and obvious danger, as it pertains to slip and fall cases, to this highway collision case; appellant argued that it had no application to the case at bar.[2] Because appellant's objections were timely and specific, the trial judge was sufficiently aware of the nature and grounds of the objection to afford him the opportunity, upon second thought, to change them if he so chose. For that reason, the objections were sufficient to pre-

---

1. Appellant requested that the following two instructions be given in place of what the court ultimately gave in instruction 5. Appellant's proposed instruction 5 omitted the second paragraph of the instruction which he objected to and provided:

 "Negligence is the lack of ordinary care. It is the failure of a person to do something a reasonable, careful person would do, or the act of a person in doing something a reasonable, careful person would not do, under all the circumstances the same or similar to those shown by the evidence. The law does not say how a reasonable, careful person would act under those circumstances, as that is for the Jury to decide.

 "Negligence is actionable only when it appears that it was a direct cause of any injury and damages complained of. A direct cause is a cause which directly brings about the injury either immediately or through happenings which follow one after another.

 "There may be more than one direct cause in that an accident may result from one or more separate and distinct acts by different persons."

 Appellant's proposed instruction 24 dealing with appellee Graves' duty of care provided:

 "The evidence in this case shows that Defendant Kenneth Graves was employed by Defendant, DeBarnardi [DeBernardi] Brothers, Inc., as a professional truck driver. As such, Defendant Kenneth Graves was under a duty to exercise the skill, diligence and knowledge and must apply the means and methods which would be reasonably exercised and applied by members of his occupation in good standing and in the same line of practice."

2. Because of the nature of appellant's objection to instruction 10, no substitute instruction was proposed nor was one necessary.

serve the issue and permit our review of the questioned instructions. Rule 51, W.R.C.P.; *Danculovich v. Brown,* Wyo., 593 P.2d 187 (1979); *Pure Gas and Chemical Company v. Cook,* Wyo., 526 P.2d 986 (1974).

 In reviewing alleged errors in jury instructions, a finding of error is not alone sufficient to reverse; prejudicial error must be found. *Walton v. Texasgulf, Inc.,* Wyo., 634 P.2d 908 (1981). Prejudicial error is never presumed; it must be established by the parties. *Pure Gas and Chemical Company v. Cook, supra.* If it is established that an instruction or instructions had a tendency to confuse or mislead the jury with respect to the applicable principles of law, reversal is proper. 9 Wright & Miller, Federal Practice and Procedure: Civil § 2558, p. 668 (1971); see also, *Marken v. Empire Drilling Company,* 75 Wyo. 121, 293 P.2d 406 (1956). We shall proceed with the foregoing in mind.

## I

 We begin our discussion of the issues by reviewing instruction 5 given by the trial court. Appellant argues that the second paragraph of that instruction is an incorrect statement of the law. We agree.

The complained of portion of that instruction states:

"A reasonable, careful person, whose conduct is set up as a standard, is not the extraordinarily cautious person, nor the exceptionally skillful one, but rather a person of reasonable and ordinary prudence."

That language is an apparent attempt to enlarge upon the reasonable man standard. In that attempt to explain the reasonable man concept, however, the instruction goes too far. It contradicts the correct statement of the law contained in the first paragraph of the instruction. Simply put, the first paragraph of the instruction correctly states that negligence is the failure to exercise ordinary care where ordinary care is that degree of care which a reasonable person is expected to exercise under the same or similar circumstances. *Vassos v. Roussalis,* Wyo., 625 P.2d 768 (1981); *Nehring v.*

*Russell,* Wyo., 582 P.2d 67 (1978); *Fegler v. Brodie,* Wyo., 574 P.2d 751 (1978). The trial court's instruction first allows the jury to consider the parties' acts as compared to how the reasonable person would act in similar circumstances and then limits the circumstances the jury can consider by taking out of their purview the circumstances of exceptional skill or knowledge which are a part of the totality of circumstances.

 Our view that negligence should be determined in view of the circumstances is in accord with the general view. The Restatement, Torts 2d § 283 (1965) defines the standard of conduct in negligence actions in terms of the reasonable man under like circumstances. Professor Prosser, discussing the reasonable man, likewise said that "negligence is a failure to do what the reasonable man would do 'under the same or similar circumstances.'" He contended a jury must be instructed to take the circumstances into account. Prosser, Law of Torts § 32, p. 151 (4th ed. 1971). Prosser also went on to note that under the latitude of the phrase "under the same or similar circumstances," courts have made allowance not only for external facts but for many of the characteristics of the actor himself.

It has been said that "[c]ircumstances are the index to the reasonable man's conduct. His degree of diligence varies not only with standard of ordinary care, but also with his ability to avoid injuries to others, as well as the consequences of his conduct." (Footnote omitted.) 1 Dooley, Modern Tort Law § 3.08, p. 27 (1982 Rev.). It was aptly put many years ago when it was said:

" 'It seems plain also that the degree of vigilance which the law will exact as implied by the requirement of ordinary care, must vary with the probable consequences of negligence and also with the command of means to avoid injuring others possessed by the person on whom the obligation is imposed. * * * Under some circumstances a very high degree of vigilance is demanded by the requirement of ordinary care. Where the consequence of negligence will probably be serious injury to others, and where the means of avoid-

ing the infliction of injury upon others are completely within the party's power, ordinary care requires almost the utmost degree of human vigilance and foresight.'" (Footnote omitted.) Id., quoting from *Kelsey v. Barney,* 12 N.Y. 425 (1855).

At a minimum, as Justice Holmes once said, the reasonable man is required to know what every person in the community knows. Holmes, Common Law p. 57 (1881). In a similar vein, Professor Prosser notes there is, at least, a minimum standard of knowledge attributable to the reasonable man based upon what is common to the community. Prosser, supra at pp. 159–160. Prosser went on to say, however, that although the reasonable man standard provides a minimum standard below which an individual's conduct will not be permitted to fall, the existence of knowledge, skill, or even intelligence superior to that of an ordinary man will demand conduct consistent therewith. Id. at 161. Along that same line, Restatement, Torts 2d § 289 (1965) provides:

> "The actor is required to recognize that his conduct involves a risk of causing an invasion of another's interest if a reasonable man would do so while exercising
>
> "(a) such attention, perception of the circumstances, memory, knowledge of other pertinent matters, intelligence, and judgment as a reasonable man would have; and
>
> "(b) such superior attention, perception, memory, knowledge, intelligence, and judgment as the actor himself has."

Section 289 comment m expands further on the effect of superior qualities of an individual when it states:

> "*m. Superior qualities of actor.* The standard of the reasonable man requires only a minimum of attention, perception, memory, knowledge, intelligence, and judgment in order to recognize the existence of the risk. If the actor has in fact more than the minimum of these qualities, he is required to exercise the superior qualities that he has in a manner reasonable under the circumstances. The

standard becomes, in other words, that of a reasonable man with such superior attributes."

The instruction given by the trial court could easily have been construed by the jury to preclude their consideration of exceptional skill or knowledge on the part of either party which the evidence may have shown. In determining negligence the jury must be allowed to consider all of the circumstances surrounding an occurrence, including the characteristics of the actors in reaching their decision. Where, as here, there was evidence from which the jury could have concluded appellee Graves was more skillful than others as a result of his experience as a driver, they should be allowed to consider that as one of the circumstances in reaching their decision. The second paragraph of instruction 5, as appellant points out, could easily have misled the jury into disregarding what they may have found from the evidence regarding appellee's skill and as such prejudiced appellant. The objectionable language of the instruction is surplus language which, rather than clarifying the fictional concept of the reasonable person, actually unduly limited it. Therefore, because instruction 5 was both an incorrect statement of the law and more importantly very probably misleading, we hold that the trial court committed reversible error in using it to instruct the jury.

## II

█ Although we hold that the trial court erred when it in effect instructed the jury to disregard exceptional characteristics of either of the parties in determining negligence, we cannot extend that holding to rule favorably on appellant's second issue. Appellant would have us hold that the trial court erred in failing to instruct that, as a matter of law, appellee Graves was held to a higher standard of care because he was a professional truck driver. It is one thing to say that, if so found, a jury can take account of an individual's exceptional knowledge or skill in determining negligence; it is quite another to say that as a matter of law, because he is a truck driver,

an individual is held to a higher standard of care than other drivers. Appellant would, in his own words, have us treat this as a professional truck driver's driver malpractice case. That we will not do.

Appellant relies on the fact that the State has created various classes of driver's licenses and that appellee Graves possessed a class "A" license as his basis for claiming that, as a matter of law, truck drivers, as a group, are held by statute to a higher standard of care. Section 31–7–109, W.S.1977, Cum.Supp.1982, is the statute upon which he relies. It provides in pertinent part:

"(a) Every driver's license issued by the department shall be classified to indicate the type or general class of vehicles the licensee may drive.

"(b) License classification shall be prescribed by the department and shall take into account the operational characteristics of the vehicles involved, their design and factors the division reasonably believes are important to safe traffic. These qualifications may include any test or affidavit of proficiency authorized to be given to the original applicants by W.S. 31–7–114.

"(c) Licensing classification plan:

"(i) Class 'C' consists of any single vehicle or combination of vehicles except motorcycles and buses not in excess of sixteen thousand (16,000) pounds unladen vehicle or total combined weight;

"(ii) Class 'B' consists of any single vehicle, except motorcycles, weighing over sixteen thousand (16,000) pounds unladen vehicle weight and all vehicles under class 'C';

"(iii) Class 'A' consists of any vehicle or combination of vehicles, except motorcycles, including all vehicles under classes 'B' and 'C'."

That statute does not create a higher standard of care for possessors of each successively higher class of license. It, in § 31–7–109(b), explains that the classification scheme was created to take cognizance of varying operational characteristics and design factors when licensing drivers to drive different classes of vehicles. It deals with what type of vehicles the holder of any class license may drive, rather than the standard of care the holder of each must exercise. Section 31–5–104, W.S.1977, sets the statutory standard that drivers must obey the traffic laws of this state. Nowhere in our statutes can we find a provision requiring that any one class of drivers must exercise a higher standard of care than others—all drivers are to exercise due care under the circumstances in the operation of their vehicles. *Miller v. Hedderman,* Wyo., 464 P.2d 544 (1970). This court has held that drivers in this state have a twofold duty to comply with the applicable traffic laws and regulations and to exercise reasonable care under the circumstances. *McVicker v. Kuronen,* 71 Wyo. 222, 256 P.2d 111 (1953).

Appellant cites *Dillenbeck v. City of Los Angeles,* 69 Cal.2d 472, 72 Cal.Rptr. 321, 446 P.2d 129 (1968) for the proposition that truck drivers as a group should be held to a higher standard of care than other drivers. Dillenbeck dealt with an automobile collision in which a policeman, responding to an emergency, drove through a red light and collided with another vehicle. The other driver died as a result of the injuries he sustained in the mishap. The issue that case decided was evidentiary rather than one dealing with jury instructions. The court ruled that evidence of police safety bulletins and the information contained therein concerning proper police procedures for responding to an emergency should have been admitted at trial. The bulletins were admissible to show procedures that may or may not have been followed by the defendant, as well as to show the standard of care required of police officers based on their knowledge. In dicta the court indicated that an instruction on a higher standard of care required of drivers of emergency vehicles may have been appropriate. It is that dicta to which appellant refers us.

*Dillenbeck* is distinguishable from the instant case on its facts. There the court dealt with the case of an emergency driver who, in the performance of his duties, was acting outside the normal traffic laws.

Here we are faced with drivers operating under the normal rules of the road with no provision for them to do otherwise.[3] Because of the factual difference, we find *Dillenbeck*, together with its dicta, inapplicable to the case before us.

Appellant cites no other authority to support an instruction that truck drivers as a class are held to a higher standard of care. Our own research has likewise failed to turn up authority to support such an instruction. Quite to the contrary, the general state of the law supports the opposite conclusion that all drivers, regardless of class, are held to the same standard of care—due care under the circumstances.[4] Without so stating to the jury by way of an instruction, jury consideration of an individual truck driver's exceptional skill is one of the circumstances contemplated by instruction 5, corrected by the deletion of the second paragraph.

In view of the lack of statutory or common-law authority which would support the giving of appellant's proffered instruction 24, we hold that the trial court quite rightly rejected it.

### III

■ We reach appellant's final issue in which he argues that the trial court erred in giving instruction 10. He particularly objects to the final sentence of that instruction which states the essence of the entire instruction. That sentence states: "There is no liability for injuries from dangers that are obvious, reasonably apparent, or as well known to the person injured as they are to any other parties." That is an erroneous statement of the law of negligence as it applies to the case at bar.

The instruction is basically the type of instruction given in a slip and fall case dealing with the known and obvious danger of natural accumulation of ice and snow. We have, on numerous occasions, upheld the known and obvious danger rule in appropriate slip and fall cases. *Norman v. City of Gillette,* Wyo., 658 P.2d 697 (1983); *Sherman v. Platte County,* Wyo., 642 P.2d 787 (1982); *Johnson v. Hawkins,* Wyo., 622 P.2d 941 (1981); *Bluejacket v. Carney,* Wyo., 550 P.2d 494 (1976). Those cases all dealt with suits brought by the injured party against the owner of the premises where the fall occurred. The thrust of our known and obvious danger rule decisions has been that the danger presented by accumulations of snow and ice does not generally create liability for a possessor of property because of their natural character. We have never, however, applied that rule to an automobile collision case where the parties involved were not in control of the premises where the accident occurred.

Here, the trial court incorrectly applied the known and obvious danger rule to a negligence action between two drivers on an icy highway. The rule does not apply in such a case. To apply such a rule to the case at bar abrogates Wyoming's comparative negligence statute[5] upon which the jury was also instructed by the trial court.

---

**3.** We note that § 31–5–107, W.S.1977, deals specifically with exemptions from the general traffic rules afforded drivers of emergency vehicles and the standards of care they are charged with.

**4.** *Capital Raceway Promotions, Inc. v. Smith,* 22 Md.App. 224, 322 A.2d 238 (1974) (neither the inexperience of a novice nor the professional experience of a truck driver affects the standard of care required of a driver); *Duckworth v. Greyhound Lines, Inc.,* 469 F.2d 424 (6th Cir.1972); and *New Deal Cab Company v. Meyer,* Fla., 139 So.2d 189 (1962) (although a common carrier owes the highest degree of care to its passengers, as to other drivers, its duty is to exercise ordinary care under the circumstances); *Lemons v. Maryland Chicken Processors, Inc.,* 223 Md. 362, 164 A.2d 703 (1960) (truck drivers are held to the same standard of care as all other drivers).

**5.** Section 1–1–109, W.S.1977, entitled "Comparative negligence" provides:

"(a) Contributory negligence shall not bar a recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if the contributory negligence was not as great as the negligence of the person against whom recovery is sought. Any damages allowed shall be diminished in proportion to the amount of negligence attributed to the person recovering.

"(b) The court may, and when requested by any party shall:

Where we have carved out a rule as a matter of public policy to protect possessors of land from liability for the natural accumulation of ice and snow, such a rule is unnecessary between two parties like those here where we have adopted comparative negligence. As we noted in *Sherman v. Platte County, supra* at 789–790, the adoption of the comparative negligence rule did not abrogate the obvious danger rule because, under that rule, there is no negligence on the defendant's part; the adoption of comparative negligence created no new duties of care. In this case, both appellant and appellees owed a duty to exercise due care under the circumstances and both have alleged the other violated that duty. Comparative negligence is particularly applicable in this case. Instruction 10 in effect resurrects contributory negligence as a bar to appellant's recovery. Our comparative negligence statute, see fn. 5, clearly forbids any such bar to appellant's recovery. See, *Board of County Com'rs of County of Campbell v. Ridenour,* Wyo., 623 P.2d 1174 (1981), reh. denied Wyo., 627 P.2d 163 (1981).

Instruction 10, viewed in any light, precludes recovery for appellant in view of the uncontroverted fact that the accident occurred on ice and such condition was known to both parties. It allows the trial court to decide the case for the jury, whereas the jury is properly the fact finder. Instruction 10 applies an inapplicable rule of law. Because it effectively precluded appellant's recovery by taking away a jury question, it was prejudicial. There can be negligent driving on icy roads by one or the other or both parties in varying percentages. What a jury may decide upon hearing this case and after being properly instructed we are unable to say. What we must say, though, is that appellant should have the benefit of having his case decided by a properly in-

structed jury rather than by the trial court through an incorrect jury instruction.

Reversed and remanded for a new trial.

"(i) If a jury trial, direct the jury to find separate special verdicts;
"(ii) If a trial before the court without jury, make special findings of fact, determining the amount of damages and the percentage of negligence attributable to each party. The

court shall then reduce the amount of such damages in proportion to the amount of negligence attributed to the person recovering;
"(iii) Inform the jury of the consequences of its determination of the percentage of negligence."